### MARILYN CHARLES *v.* OWEN CHARLES
### (SC 15701)

Callahan, C. J., and Borden, Berdon, Katz, Palmer and McDonald, Js.[1]

Argued September 30—officially released November 18, 1997

*David P. Gaccione,* with whom was *Rob Cary, Jr.,* for the appellant (plaintiff).

---

[1] Subsequent to oral argument in this appeal, Justice Norcott, although originally assigned to hear the case, disqualified himself. The parties have agreed to have the appeal decided by the remaining six justices.

*Carmine J. Giuliano,* with whom, on the brief, was *Lisa J. Marotta,* certified legal intern, for the appellee (defendant).

*Richard Blumenthal,* attorney general, and *Carolyn K. Querijero* and *Susan Quinn Cobb,* assistant attorneys general, filed a brief for the attorney general as amicus curiae.

*Patrice H. Kunesh* and *Jackson T. King, Jr.,* filed a brief for the Mashantucket Pequot Tribe as amicus curiae.

*Opinion*

CALLAHAN, C. J. The sole issue on appeal is whether the Superior Court has subject matter jurisdiction, pursuant to General Statutes § 46b-44 (c) (1),[2] over a dissolution of marriage action brought by an individual who is not a resident of Connecticut against a member of the Mashantucket Pequot Indian Tribe (tribe) who resides on the tribe's reservation in Ledyard. We answer this question in the affirmative.

The relevant facts and procedural history are as follows. On November 1, 1995, the plaintiff, Marilyn Charles, a nonIndian resident of Rhode Island, filed this action for dissolution of marriage in the Superior Court for the judicial district of New London. The defendant, Owen Charles, is a member of the Mashantucket Pequot Indian Tribe, who resides on the tribe's reservation in Ledyard. The defendant was a resident of the reservation for at least twelve months immediately prior to the initiation of the plaintiff's action. See General Statutes § 46b-44 (c) (1).

---

[2] General Statutes § 46b-44 provides in relevant part: "(c) A decree dissolving a marriage or granting a legal separation may be entered if: *(1) One of the parties to the marriage has been a resident of this state for at least the twelve months next preceding the date of the filing of the complaint or next preceding the date of the decree* . . . ." (Emphasis added.)

On May 7, 1997, the trial court, acting upon the defendant's motion to dismiss, determined that the defendant was not a resident of Connecticut for purposes of § 46b-44 (c) (1). The court concluded, consequently, that it lacked subject matter jurisdiction over the plaintiff's action and dismissed her complaint. The trial court reasoned that, because the defendant resided on the reservation, he was not a Connecticut resident and, therefore, the court was without jurisdiction.[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We conclude that the trial court has subject matter jurisdiction over the dissolution action, and we reverse the judgment of the trial court.

An action for dissolution of a marriage "obviously is a civil action." *Smith* v. *Smith*, 150 Conn. 15, 19, 183 A.2d 848 (1962). The Superior Court has exclusive jurisdiction of all complaints seeking a dissolution of marriage. General Statutes § 46b-42. Section 46b-44 establishes a residency requirement, satisfaction of which is essential to confer on the court subject matter jurisdiction over a dissolution action.[4] Because the plaintiff in this case resides in Rhode Island, the statute can be satisfied only if the defendant meets the requirements of § 46b-44 (c) (1), which grants subject matter jurisdiction if "[o]ne of the parties to the marriage has been a resident of this state for at least the twelve months next preceding the date of the filing of the

---

[3] In its memorandum of decision, the trial court stated that "Rhode Island, by virtue of the plaintiff's residence, has an interest in the outcome of the divorce proceeding. [The tribe] by virtue of the defendant's residency and tribal membership, has an interest in the outcome of the proceeding. This court fails to find a corresponding interest for the state of Connecticut. For the foregoing reasons, the court concludes that a Mashantucket tribal member residing on the reservation does not satisfy the residency requirement of § 46b-44."

[4] See footnote 2 of this opinion.

complaint . . . ." See footnote 2 of this opinion. The threshold question before us, therefore, is whether the defendant, a tribal member residing on the reservation,[5] is subject to the jurisdiction of the Superior Court of the state of Connecticut in this civil action for the dissolution of marriage.

The defendant argues that the Superior Court lacks subject matter jurisdiction because the tribe has not consented to the jurisdiction of the state in civil matters. The fallibility of this argument lies in its assumption that the tribe's consent is necessary. We previously have addressed the question of state jurisdiction over Indian residents of the Mashantucket Pequot Reservation in the criminal context. *State* v. *Spears*, 234 Conn. 78, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995). In *Spears*, after a lengthy analysis of the relevant statutes, we held that tribal consent to the state's criminal jurisdiction was not required. Id., 96. The rationale employed in *Spears* is equally applicable to the question of civil jurisdiction in this case. Accordingly, we conclude that tribal consent is not required to confer state jurisdiction over this civil action against a member of the Mashantucket Pequot Tribe who resides on the tribe's reservation in Ledyard.

To answer the question presented, we must construe those federal statutes that govern state jurisdiction over Indian country[6] generally and the territory of the Mashantucket Pequot Tribe in particular. Our analysis of the statutes is guided by well established principles of statutory construction. "Statutory construction is a question of law and therefore our review is plenary."

---

[5] Connecticut formally recognizes members of the Mashantucket Pequot Tribe as "Indians" and recognizes their reservation in Ledyard. General Statutes § 47-63.

[6] "Indian country" is defined as "all land within the limits of any Indian reservation under the jurisdiction of the United States Government . . . ." 18 U.S.C. § 1151 (a).

*Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). "We . . . must effectuate the expressed Congressional intent. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . Ordinarily, if the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citations omitted; internal quotation marks omitted.) *State* v. *Spears*, supra, 234 Conn. 85–86.

We begin with an analysis of the text of the federal statutes that govern Indian affairs generally. The United States has the authority to regulate Indian affairs pursuant to the Indian commerce clause of the United States constitution. U.S. Const., art. I, § 8, cl. 3; see *White Mountain Apache Tribe* v. *Bracker*, 448 U.S. 136, 100 S. Ct. 2578, 65 L. Ed. 2d 665 (1980). Congress addressed the issue of state jurisdiction over tribal land in 1953 when it enacted Public Law 83-280.[7] That legislation granted five states civil jurisdiction over tribal lands within their boundaries, increasing that number to six the following year.[8] The 1953 act provided an option for other states to assume civil jurisdiction over tribal lands if their state legislatures affirmatively authorized such assumption.[9] In 1968, Congress repealed Public

[7] Public Law 83-280 appears at 18 U.S.C. § 1162 and 28 U.S.C. § 1360 (1953).

[8] The original five states were California, Minnesota, Nebraska, Oregon and Wisconsin. Alaska was added later. At that time, Connecticut had no federally recognized tribal lands.

[9] Section 7 of Public Law 83-280 authorizes "any other State not having jurisdiction with respect to . . . civil causes of action . . . as provided for in this Act, to assume jurisdiction at such time and in such manner as the

Law 83-280 and replaced it with Title IV of the Indian Civil Rights Act of April 11, 1968, 82 Stat. 78, which is codified at 25 U.S.C. §§ 1321 through 1326. Title IV provides in §§ 1321 and 1322 (§§ 401 and 402 of Title IV), respectively, that the tribe must consent to the assumption by the states of civil and criminal jurisdiction.[10]

In 1971, the United States Supreme Court concluded that the *sole* method of tribal consent to the assumption of both criminal and civil jurisdiction under Title IV was the method established in § 1326. *Kennerly* v. *District Court of Montana*, 400 U.S. 423, 429, 91 S. Ct. 480, 27 L. Ed. 2d 507 (1971). That section provides that "[s]tate jurisdiction acquired pursuant to this subchapter with respect to criminal offenses or civil causes of action, or with respect to both, shall be applicable in Indian country only where the enrolled Indians within the affected area of such Indian country accept such jurisdiction by a majority vote of the adult Indians voting at a special election held for that purpose." 25 U.S.C. § 1326 (§ 406 of Title IV). If that statute were the last word on state jurisdiction over Indian country, the defendant's claim that the court lacked jurisdiction

people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof." Act of Aug. 15, 1953, c. 505, § 7, 67 Stat. 590.

[10] Title 25 of the United States Code, § 1322 (a) provides: "The consent of the United States is hereby given to any State not having jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country situated within such State to assume, with the consent of the tribe occupying the particular Indian country or part thereof which would be affected by such assumption, such measure of jurisdiction over any or all such civil causes of action arising within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country or part thereof as they have elsewhere within the State."

Title 25 of the United States Code, § 1321 provides for criminal jurisdiction in virtually identical terms. See footnote 13 of this opinion.

would be correct because the tribe has not accepted state jurisdiction "by a majority vote of the adult Indians voting at a special election held for that purpose."

In 1983, however, Congress enacted the Mashantucket Pequot Indian Claims Settlement Act[11] (Settlement Act) to effectuate a land dispute settlement between the tribe and the state of Connecticut. Congress provided in § 6 of the Settlement Act; 25 U.S.C. § 1755; that "[n]otwithstanding the provision relating to a special election in section 406 of the Act of April 11, 1968 (82 Stat. 80; 25 U.S.C. 1326), the reservation of the Tribe *is declared to be Indian country subject to State jurisdiction to the maximum extent provided in [T]itle IV of such Act* [25 U.S.C. 1321 et seq.]." (Emphasis added.) That provision has been interpreted by this court as conferring jurisdiction on the state without the requirement of tribal consent. *State* v. *Spears*, supra, 234 Conn. 84–94. *Spears* involved a determination of the criminal jurisdiction of the state over members of the tribe. The statutory analysis and result with respect to civil jurisdiction are, however, substantially the same.[12]

---

[11] The Mashantucket Pequot Indian Claims Settlement Act of 1983, Public Law 98-134, § 2, October 18, 1983, 97 Stat. 851, is codified at 25 U.S.C. §§ 1751 through 1760.

[12] The defendant's reliance on *Mashantucket Pequot Tribe* v. *McGuigan*, 626 F. Sup. 245 (D. Conn. 1986) is misplaced. That decision dealt with the applicability to the tribe of Connecticut's bingo laws, deemed to be a regulatory scheme. In dicta, without analysis, the United States District Court in *McGuigan* pondered whether the elimination by § 1755 of the special election provision of § 1326 "may have created an anomaly by the fact that it does not eliminate the consent requirement of 25 U.S.C. § 1321. It is not necessary, however, to resolve that question . . . ." Id., 248. This court has had difficulty clearly articulating our interpretation of that decision. In *Schaghticoke Indians of Kent, Connecticut, Inc.* v. *Potter*, 217 Conn. 612, 615 n.3, 587 A.2d 139 (1991), we indicated that *McGuigan* held that Connecticut had acquired criminal but not civil jurisdiction. We later clarified our interpretation of that case as leaving the question of criminal jurisdiction open because it dealt only with the bingo rules, which are " 'civil/regulatory.' " *State* v. *Spears*, supra, 234 Conn. 84 n.4. We now make clear that

Relying on precedent of the United States Supreme Court, we concluded in *Spears* that the only mechanism for establishing the requisite tribal consent to criminal jurisdiction in § 1321 would have been through the special election provision of § 1326 (§ 406 of Title IV of the Indian Civil Rights Act). *State* v. *Spears,* supra, 234 Conn. 90, quoting *Kennerly* v. *District Court of Montana,* supra, 400 U.S. 429. Cognizant of the fact that the United States Supreme Court had interpreted § 1326 as the *only* mechanism for tribal consent, Congress eliminated that mechanism when it enacted § 1755 (§ 6 of the Settlement Act). "It follows, then, that the nullification by § 1755 of the special election requirement, the sole means by which Indian tribes may consent to state jurisdiction [under Title IV], accompanied by an express grant of jurisdiction to the state, effectively nullifies the tribal consent requirement in § 1321 [and, likewise § 1322]."[13] *State* v. *Spears,* supra, 90.

The legislature is presumed to know the judicial interpretation placed upon a statute. *State* v. *Crowell,* 228

the dicta in *McGuigan* has *no* relevance to the analysis of whether § 1755 granted civil and criminal jurisdiction to the state of Connecticut while eliminating any tribal consent requirement. The United States District Court expressly stated that it did not reach that issue. In *Spears,* however, this court did resolve the unanswered question of the effect of § 1755 on the consent requirement of § 1326.

[13] The consent language of § 1322 is identical in all material respects to § 1321. The differences in the two statutes are highlighted immediately below.

Title 25 of the United States Code, § 1321 (a) provides in relevant part: "The consent of the United States is hereby given to any State not having jurisdiction over *criminal offenses committed by or against Indians* in the areas of Indian country situated within such State to assume, with the consent of the Indian tribe occupying the particular Indian country or part thereof which would be affected by such assumption . . . ." (Emphasis added.)

Title 25 of the United States Code, § 1322 (a) provides in relevant part: "The consent of the United States is hereby given to any State not having jurisdiction over *civil causes of action between Indians or to which Indians are parties which arise* in the areas of Indian country situated within such State to assume, with the consent of the tribe occupying the particular

Conn. 393, 401, 636 A.2d 804 (1994); *Cappellino* v. *Cheshire*, 226 Conn. 569, 576, 628 A.2d 595 (1993). It is further presumed that when the legislature subsequently acts with respect to a statute, it does so with full awareness of relevant judicial interpretations. *Rodriguez* v. *United States*, 480 U.S. 522, 525, 107 S. Ct. 1391, 94 L. Ed. 2d 533 (1987). It is essential that statutes be read as constituting one harmonious whole. *Digital Equipment Corp.* v. *Desktop Direct, Inc.*, 511 U.S. 863, 878–79, 114 S. Ct. 1992, 128 L. Ed. 2d 842 (1994). "The only way to harmonize [§ 1321 or § 1322 and § 1326] with each other and with § 1755 is to conclude that the abrogation of the only method of consent abrogated the necessity for consent." *State* v. *Spears*, supra, 234 Conn. 91.

The defendant attempts to distinguish our decision in *Spears* on the ground that in *Spears* we addressed only criminal jurisdiction, and that civil jurisdiction appears in a separate section of Title IV of the Indian Civil Rights Act. This argument is without merit. Although the holding in *Spears* regarding criminal jurisdiction may not control this civil action, its underlying rationale is equally applicable to this case. Section 1755 does not provide that the tribe is subject to state jurisdiction only to the maximum extent provided in § 1321. Rather, § 1755 provides: "[T]o the maximum extent provided in *Title IV* of such Act." (Emphasis added.) Title IV of "such Act" refers to the Indian Civil Rights Act, which includes §§ 1321 through 1326. Title IV encompasses both the criminal jurisdiction provision of § 1321 and the civil jurisdiction provision of § 1322. Therefore, "jurisdiction to the *maximum* extent provided in Title IV" (emphasis added) includes both criminal and civil

Indian country or part thereof which would be affected by such assumption . . . ." (Emphasis added.)

jurisdiction.[14] Section 1755, which is § 6 of the Settlement Act, therefore, eliminated the consent requirement with respect to civil jurisdiction contained within Title IV as well as the consent requirement with respect to criminal jurisdiction. The plain language of these interlocking statutes permits no other interpretation.

The legislative history of the Settlement Act provides further support for the proposition that Congress intended to eliminate the consent requirement. The reports of both the Senate and the House of Representatives indicate that "[s]ection 6 [§ 1755] provides that the reservation . . . is subject to the full extent of State jurisdiction . . . as defined in Title IV of the Act of April 11, 1968, the Indian Civil Rights Act. The Tribe's reservation *has this status* notwithstanding section 406 of the Indian Civil Rights Act [§ 1326] which requires a majority vote of the enrolled members of an Indian tribe before a state may assume jurisdiction over that tribe." (Emphasis added.) S. Rep. No. 222, 98th Cong., 1st Sess., 16 (1983); H.R. Rep. No. 43, 98th Cong., 1st Sess., 10 (1983). The "full extent of State jurisdiction . . . as defined in Title IV" includes both criminal and civil jurisdiction. Moreover, the use of the present tense, "has this status," in the Senate report clearly indicates that the intent of Congress was that the grant of jurisdiction to Connecticut be accomplished by the enactment of the statute. If consent were still required, the statement would have been cast in the future tense, denoting that the tribe *will* have this status after it consents. See *State* v. *Spears*, supra, 234 Conn. 94.

As with criminal jurisdiction, the plain language and legislative history of § 6 of the Settlement Act; 25 U.S.C. § 1755; evince a clear intent to eliminate the provision

[14] Section 1326, which was supplanted by § 1755 with respect to the Mashantucket Pequot Tribe, specifically encompassed consent to jurisdiction over "criminal offenses or civil causes of action, or . . . both . . . ."

in § 1326 requiring tribal consent as a prerequisite to conferring civil jurisdiction on the state pursuant to § 1322. Accordingly, Connecticut has jurisdiction "over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country situated within [Connecticut]" pursuant to 25 U.S.C. § 1322.[15] Once the state acquires civil jurisdiction, it has "such measure of jurisdiction over any or all such civil causes of action arising within such Indian country or any part thereof as may be determined by such State *to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State.*" (Emphasis added.) 25 U.S.C. § 1322.

Because Congress, in adopting the Settlement Act, conferred upon the state of Connecticut the civil jurisdiction provided in § 1322, it necessarily follows that the defendant is subject to the provisions of § 46b-44 "to the same extent" as if he were a resident of the state.[16] The civil laws of the state, including § 46b-44, have the same force and effect on the reservation as they have elsewhere in Connecticut. The defendant may not, therefore, avail himself of the argument that he is not a Connecticut resident in order to evade the

---

[15] Viewed another way, the Settlement Act itself is tribal consent. That act was enacted as a compromise settlement among the tribe, the state of Connecticut and the federal government. See *Mashantucket Pequot Tribe* v. *McGuigan*, supra, 626 F. Sup. 247. In agreeing to the Settlement Act's provisions, which enabled settlement of the tribe's land claims in Ledyard, the tribe relinquished its right to require its consent to state jurisdiction.

[16] We note that we do not here decide whether an Indian resident of Indian country is a resident of the state in which the reservation is located for all purposes. We hold only that Connecticut has jurisdiction pursuant to 25 U.S.C. §§ 1322 and 1755 and so has jurisdiction over this dissolution action to the same extent that it would have if the defendant were not a resident of the reservation residing within the boundaries of the state of Connecticut.

jurisdiction of the Connecticut courts over this action. The Superior Court has jurisdiction over this action pursuant to 25 U.S.C. §§ 1755 and 1322 to the same extent it would have if the defendant were any other resident of Connecticut. The defendant, consequently, must be treated as a resident of Connecticut for purposes of § 46b-44 (c) (1) notwithstanding his tribal membership and residency on the tribal reservation. Therefore, the Superior Court has subject matter jurisdiction over this dissolution action.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.