[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO DISMISS, #122
 Facts and procedural Background
In a complaint, dated August 27, 1996, plaintiffs, Gerald Maranda, a former security administrator for Foxwoods Resort and Casino (casino), and John Drumm and Richard Perron, both members of the Connecticut State Police, filed suit against G. Michael Brown, Robert Carroll, George Henningsen and Robert Winter, officers of the Mashantucket Pequot Gaming Enterprise (gaming enterprise).[1] The Mashantucket Pequot Tribe (tribe) owns the CT Page 6744 gaming enterprise and casino. The plaintiffs also named Richard Hayward, member and then chair of the tribal council, as a defendant.
On December 6, 1996. the defendants filed a motion to dismiss the original complaint on the ground that the plaintiffs had failed to exhaust their tribal remedies; the court granted the defendants' motion on June 27, 1997 (Arena, J.).
The plaintiffs appealed the judgment of the trial court.
In the interim, plaintiffs Drumm and Perron began parallel proceedings in the Mashantucket Pequot Tribal Court (tribal court).
Upon appeal, the Supreme Court for the State of Connecticut reversed the lower court; Drumm v. Brown, 245 Conn. 657, 659,716 A.2d 50 (1998); concluding that Connecticut courts have authority to hear and decide civil matters, even those involving tribal members; Id., 675 n. 6. See also Charles v. Charles,243 Conn. 255, 701 A.2d 650 (1997), cert. denied, ___ U.S. ___ (1998). The court further held that there exists a strong presumption in favor of a plaintiff's choice of forum. Id., 688.
In light of the parallel tribal court proceeding, the Supreme Court directed that the trial court stay the proceedings with respect to plaintiffs Drumm and Perron; however, since Maranda had not initiated tribal court proceedings, the Drumm Court remanded his claims back to the trial court for further proceedings consistent with its decision. Id., 689.
Thereafter, the defendants requested that Maranda revise his complaint, which he has done. Plaintiff's Second Revised Complaint, dated November 14, 1998. The defendants now move to dismiss counts three (intentional infliction of emotional distress) and four (negligent infliction of emotional distress) of the plaintiff's second revised complaint. Defendants' Motion to Dismiss, dated December 10, 1998. The defendants submitted the requisite memorandum of law in support of their motion to dismiss. After which, the plaintiff filed a memorandum of law in opposition.
Standard of Review
"A motion to dismiss . . . properly attacks the jurisdiction CT Page 6745 of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). "The doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore [provided the court finds sovereign immunity applicable] a basis for granting a motion to dismiss." (Internal quotation marks omitted.) FederalDeposit Ins. Corp. v. Peabody, N.E., Inc., 239 Conn. 93, 99,680 A.2d 1321 (1996).
 Discussion
The defendants contend that the doctrine of sovereign immunity divests the trial court of subject matter jurisdiction and, further, that federal law pre-empts the authority of the trial court under these circumstances since an exercise of jurisdiction by the trial court would interfere with the inherent sovereignty of the tribe.
The plaintiff argues that he directed his complaint against the individually-named defendants, not the tribe; and, therefore, sovereign immunity does not attach. Moreover, the plaintiff asserts that his claim does not interfere with tribal self-government nor impair any right granted to the tribe by the federal government.
"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . Jurisdiction of the subject matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong." (Brackets in original; internal quotation marks omitted.) Doe v. Roe,246 Conn. 652, 661, 717 A.2d 706 (1998).
The Connecticut Supreme Court has established that her trial courts have the authority and competence to hear and decide civil causes of action and criminal matters, including cases that involve events that occur on the Mashantucket Pequot reservation and/or involve members of the tribe. State v. Spears,234 Conn. 78, 662 A.2d 80, cert. denied, 116 S.Ct. 565 (1995); Charles v.Charles, supra, 243 Conn. 255; Drumm v. Brown, supra,245 Conn. 657.
Sovereign Immunity
CT Page 6746
Nevertheless, the defendants assert that as officers of the casino and, therefore, the tribe, the doctrine of sovereign immunity shields their actions from liability. The defendants correctly note that federal law absolutely shields the tribe from suit. Kiowa Tribe of Oklahoma v. Manufacturing Technologies,Inc., ___ U.S. ___ (1998). The defendants also correctly state that federal law protects "tribal officials" from liability for acts committed within the scope of their authority. Romanella v.Hayward, 933 F. Sup. 167 (D. Conn. 1996) aff'd, 114 F.3d 15 (2d Cir. 1997).
The latter privilege, however, is not absolute; Santa ClaraPeublo v. Martinez, 436 U.S. 49, 59 (1978); and neither the defendants nor the plaintiff has adequately addressed the scope or application of the doctrine of tribal immunity nor the extent of immunity available to tribal employees for tortious acts committed within the scope of their employment. Specifically, does federal law provide immunity for tribal employees who negligently perform their jobs when such negligent performance would otherwise give rise to a common law tort action? Historically, under the common law, an "official who committed a common-law tort was said to have been `stripped' of his official or representative character." Idaho v. Coeur D'Alene Tribe ofIdaho, 521 U.S. 261, 272 (1997).
Moreover, neither of the parties discussed the distinction between employees acting in a representative capacity for the sovereign, i.e., as governmental actors, versus employees acting in a non-governmental, e.g., commercial, capacity. Specifically, does the doctrine of Ex Parte Young, 209 U.S. 123 (1908), provide immunity for the commercial, as well as sovereign, acts of tribal employees; if yes, do the principles of mutuality change this analysis?
Without a clear showing that either the United States Congress or federal common law provides these defendants with a grant of absolute immunity for their allegedly negligent acts, this court cannot conclude that the federal common law that accords tribes "sovereign immunity" extends to the individually-named defendants. See, e.g., Tamiami Partnership. v.Miccosukee Tribe of Indians, 63 F.3 1030, [63 F.3d 1030], 1475 (11th Cir. 1995).
Absent such a finding, the doctrine of sovereign immunity does not oust this court of jurisdiction. CT Page 6747
Further, if the defendants do enjoy an absolute privilege for negligent acts committed in the course of their authorized (discretionary or ministerial) duties, then as a minimum procedural safeguard, the court will conduct an evidentiary hearing to determine the scope of the respective defendants' responsibilities before concluding that the defendants acted within the scope of their employment and consequently, by extension, that sovereign immunity operates as a jurisdictional bar.
If, instead, the grant of immunity is conditional or qualified then the court clearly has jurisdiction; Owen v. Cityof Independence, 445 U.S. 622, 647 (1980); and, although the court expresses no opinion about the legal sufficiency of the plaintiff's complaint, assuming, arguendo, that it is sufficient, the defendants may, in turn, properly raise this conditional privilege as a special defense; Practice Book § 10-50; a defense that may defeat the plaintiff's claim upon a motion for summary judgment; Practice Book § 17-44; or at trial.
Accordingly, the court declines to rule on the defendants' motion to dismiss count four (negligent infliction of emotion distress) and orders that both parties provide the court, within thirty days of this ruling, with a detailed memorandum of law that specifically addresses whether or not federal common law provides absolute immunity to tribal employees for negligent acts performed within the scope of their employment.
The plaintiff's claim of intentional infliction of emotional distress does not create the same concerns for the court. The plaintiff, in count three of his second revised complaint, alleges that the individual defendants intentionally and "maliciously conspired and acted together" to cause Maranda "emotional distress." Intentional, tortious misconduct, by definition, exceeds the scope of one's employment and therefore cannot be cloaked by the mantle of sovereign immunity. See, e.g.,Faragher v. Boca Raton, ___ U.S. ___ (1998) (harassment typically falls outside the scope of employment). See also, Burnham v.Pequot Pharmaceutical Network, Superior Court, judicial district of New London, Docket No. 536264 (Jun. 19, 1998) (Kolestsky, J.) (allowed a claim for infliction of emotional distress to proceed against tribal employees).
Accordingly, the defendants' motion to dismiss count three CT Page 6748 (intentional infliction of emotion distress) is denied.
Tribal Self-Government
The defendants additionally assert that federal law pre-empts jurisdiction by the trial court over tribal employees since an exercise of authority by the trial court would interfere with the tribe's right to self governance. The plaintiff, again, asserts that there exists a crucial distinction between suing a tribal employee for tortious misconduct and suing the tribe. The plaintiff also asserts that these individuals, employed by the tribe, sought to interfere with an on-going, criminal investigation conducted by the state police and that allegation proves sufficient to undermine any legitimate claim by the defendants that proceeding through the trial court harms the internal or social relations of the tribe.
The court, again, agrees with the defendants that federal law clearly pre-empts the exercise of state jurisdiction in matters that involve tribal self-determination and government. See, e.g.,Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978) (courts have no jurisdiction over tribal membership criteria). See also General Statutes § 47-59a.
Tortious acts of negligent individuals, who also happen to be employees of the tribe, do not, however, necessarily implicate, let alone undermine, the court's authority; particularly in light of the State of Connecticut's election to exercise civil and criminal jurisdiction pursuant to the Mashantucket Pequot Indian Claims Settlement Act, 25 U.S.C. § 1751 through 1760 (1994).
Moreover, based on the few facts available to the court at this stage of the proceedings, the court does not find that the alleged tortious "misconduct of the defendants, which allegedly occurred within the context of an employee-employer dispute, constitutes a sufficient basis for divesting a trial court of jurisdiction; holding that state law is inapplicable; or that applying the state's common law under these circumstances will unduly infringe upon the autonomy of the tribe or disturb its inherent sovereignty. See Schaghticoke Indians of Kent, Conn.,Inc. v. Potter, 217 Conn. 612, 629, 587 A.2d 139 (1991).
Nevertheless, as the Drumm Court suggested, the trial court may elect to stay or dismiss a case involving tribal employees in the interests of comity. Drumm v. Brown, supra, 245 Conn. 657, CT Page 6749 668. The defendants, however, have not requested that the court stay or dismiss the plaintiff's action in light of the "values of judicial economy, convenience, fairness and comity." SeeConnecticut National Bank v. Rytman, 241 Conn. 24, 47,694 A.2d 1246 (1997) (federal court's exercise of pendent jurisdiction).
Accordingly, the court declines to exercise its discretion.
The defendants' arguments concerning tribal autonomy and the integrity of tribal self-government prove especially unpersuasive and unavailing with respect to the alleged intentional, tortious misconduct of employees who act beyond the scope of their authorized duties. The exercise of state jurisdiction over the intentional misconduct of the individually-named defendants does not comprise the integrity of the tribe or its government.
Moreover, the tribe, should it elect, retains the power to sanction employee misconduct independent and unincumbered by the trial court proceedings.
Accordingly, the defendants' motion to dismiss count three of the plaintiff's second revised complaint is hereby denied.
Conclusion
In conclusion, the court denies the defendants' motion to dismiss count three (intentional infliction of emotion distress) of the plaintiff's second revised complaint.
The court further orders that the parties submit to the court, within thirty days of this ruling, a memorandum of law that specifically addresses the following question:
"Does federal common law confer a grant of absolute immunity upon tribal employees? If the federal common law does not provide such an absolute privilege, how does federal law condition or qualify the doctrine of sovereign immunity with respect to tribal employees?"
It is so ordered.
BY THE COURT
Robaina, J. CT Page 6750