| | |
|---|---|
| 44 | 841 |
| 45 | 388 |
| 45 | 454 |
| 45 | 778 |
| 45 | 999 |
| 44 | 841 |
| 47 | 691 |
| 47 | 860 |
| 47 | 976 |
| 47 | 1448 |
| 44 | 841 |
| 49 | 397 |
| 44 | 841 |
| 50 | 330 |
| 51 | 54 |
| 44 | 841 |
| 105 | 135 |
| 44 | 841 |
| e114 | 783 |

## No. 1260.

### GILKESON SLOSS COMMISSION COMPANY vs. BOND & WILLIAMS— YALE & BOWLING, IN LIQUIDATION, AND A. BALDWIN & CO., LIMITED, INTERVENORS.

*Any person not designated in Art. 2247 C. C. may purchase a litigious right.*

*The penalty of nullity resulting from the purchase of a litigious right does not destroy the original obligation. Therefore only those whose rights are violated can demand the nullity of the purchase.*

*Intervenors will not be permitted to urge defences personal to the defendant The formality and regularity of the attachment proceedings, the rightful issuing of the attachment, in the absence of fraud and collusion between plaintiff and defendant, are matters pertaining exclusively to the defendant. The intervenor is limited to the assertion of his own right, to show that the property attached is his; that he has a superior privilege on it, or that the plaintiff and defendant perpetrated fraud in combining to have the attachment issued to defeat intervenor's pursuit of the property.*

*On questions of fact found by the district judge, the judgment will not be disturbed, except for urgent reasons.*

APPEAL from the Sixth District Court, Morehouse Parish. *Baird, J.*

*Newton & Cason* for Plaintiffs and Appellees:

Supreme Court without jurisdiction *ratione materiæ* when amount in dispute is less than $2000 exclusive of interest. Art. 81 Const., Act 125, 1882.

Any person may purchase litigious right not designated in Art. 2447 C. C.

The nullity resulting from Art. 2447 C. C. (as to purchase of litigious rights) is relative, and can be invoked only by one whose *right is violated.* 7 An. 168.

Intervenor can not question irregularities in the suit to which he has made himself a party. 8 An. 222; 14 An. 427; 21 An. 118.

Commission Co. vs. Bond & Williams et al.

The qualifications of a surety are that he shall be domiciled in parish where suit is instituted and possessed of sufficient property. C. C. 3042; C. P. 246; 19 L. 88; 14 An. 140.

Attachment will lie against debtor who has assigned and disposed of and is about to assign and. dispose of his property with intent to place it beyond reach of creditors, and to defraud. Code of Practice.

*R. B. Todd, Jr.*, and *Boatner & Lamkin, contra.*

## MOTION TO DISMISS.

The opinion of the court was delivered by

McENERY, J.   A motion has been filed to dismiss the appeal of A. Baldwin & Co. on the ground that we have no jurisdiction *ratione materiæ.*

The judgment appealed from orders the distribution of more than $8000 among several attaching creditors.

The motion is therefore denied.

## ON THE MERITS.

Plaintiffs instituted attachment proceedings against defendants on the ground that they had mortgaged, assigned and disposed of their property, also that they had converted and were about to convert their property into money or evidences of debt, with the intent to place it beyond the reach of their creditors.   For the same reasons alleged by plaintiffs there were seven other attachments issued against the defendants, among them the three banking institutions of Monroe and the intervenors.

That there was just cause for all the attachments there is no room for doubt.   The evidence is overwhelming.

After the issuance of the attachments, Yale & Bowling and A. Baldwin & Co. intervened in the suit of plaintiff and resisted their attachment on the following grounds:

1. Informalities in the bond, alleging the insufficiency of the securities.

2. That plaintiffs' demand is fictitious.

3. That the attachment issued without legal cause, having been invited and solicited by defendants, and that the plaintiff and defendants fraudulently agreed and colluded between themselves that it

should issue against defendants in order to place their property beyond the reach of other creditors.

4. That the purchase by plaintiff of the claims of the Monroe banks against defendant was the purchase of litigious rights and therefore null and void.

There was judgment for plaintiffs, and the interventions were dismissed, from which judgment they appeal.

1. On the first point urged by the intervenors it is elementary that in an attachment suit the intervenor will not be permitted to urge defences personal to the defendant.

The formality and regularity of the proceedings, the rightful issuing of the attachment, in the absence of fraud and collusion between plaintiff and defendant, are matters pertaining exclusively to the defendant. The intervenor is limited to the assertion of his own rights, to show that the property attached is his, that he has a superior privilege on it, or, as is alleged in this case, that the plaintiff and defendant perpetrated a fraud in the issuing of the attachment, in order to defeat his pursuit of the property.

He has nothing to do with the irregularity of the affidavit, the insufficiency of the attachment bond, and other irregularities in the proceedings. Flemming and Baldwin vs. Shields, 21 An. 118; Lee et als. vs. Bradlee, 8 M. 55; 8 R. 123; Carroll & Co. vs. Bridewell, 27 An. 239; 13 An. 222; 19 An. 462.

2. Plaintiffs proved the reality and existence of their debt. There was no serious attempt made to resist it.

3. From a careful examination of the record we are of the opinion that the intervenors have failed to prove that the plaintiffs and defendants were guilty of fraud and collusion in the issuing of the attachment by plaintiffs against the defendant. The defendants were in failing circumstances. They failed in their negotiations to raise money to pay their obligations, or to get an extension of time from the Monroe banks. Angered and mortified, disappointed and hopeless, they told plaintiffs' attorney that they would take care of themselves. They told plaintiffs' agent the same thing. No action was taken by plaintiffs' attorney on these impulsive declarations. It was only several days after, when he learned that the defendants were really in earnest in their statements and were disposing of their property, that he caused the attachment to issue. Before the issuing of the attachment, cotton was shipped by defendant to plaintiffs.

They were obligated to do this, as plaintiffs were furnishing them with supplies, the agreement being to ship one bale of cotton for every $20 furnished. After the seizure the plaintiffs received cotton from defendants, which had not been seized under the attachment.

This was in pursuance of an arrangement between the plaintiffs and the defendants, which is urged as one of the strongest proofs of the collusion. The arrangement was legitimate. It was an effort on the part of plaintiffs to save what they could, and on the part of defendant, to get eventual control of his property. In this no injury could be done to intervenors. On the contrary, it would inure to their benefit if successful.

The plaintiffs purchased the property under seizure, and agreed to cultivate the plantations and conduct the commercial business in their own name, engaging the services of defendants at $75 per month cash.

When plaintiffs, from the profits of the business, realized their debt, they agreed to restore the property and business to defendants. The necessities of the creditor and the debtor would naturally point to this arrangement.

The $1500 paid to plaintiffs was a part of the proceeds of cotton converted by defendants, and was one of the inducements offered by defendants to effect the arrangement. It was to aid in procuring transfer of the banks' claims.

These are isolated facts, which taken by themselves lead to suspicion, but they are not sufficient proof, and are explained away when taken in connection with other facts. They were logical sequences of the financial condition of defendants. The efforts of the creditor to save his debt out of the wreck, and of the debtor to provide for the future, were legitimate, provided no creditor was injured.

On this branch of the case we give great weight to the opinion of the District Judge. He saw and heard the witnesses, and when the judgment appealed from rests upon facts we will not without urgent reasons disturb it.

The learned District Judge says, in his elaborate and carefully considered reasons for the judgment, that "after hearing the witnesses, and upon a careful perusal of the testimony and the documents filed in evidence, I am convinced that the intervenors have failed to

establish their allegations and that their intervention should be dismissed at their costs.''

4. The claims of the Monroe banks were transferred to the plaintiffs after the issuing of their attachment against defendants. This purchase the intervenors attack as the purchase of litigious rights, and therefore null and void. The penalty of nullity of the purchase does not destroy the obligation, and prevent the original owner from asserting his rights. The intervenor is only concerned with enforcing his own rights, and it can not be perceived what interest or right to preserve or enforce he can accomplish by attacking this sale of the banks' obligations to plaintiff. He is without interest to do so. Suc. Hoover vs. York & Hoover, 30 An. 752.

The parties who purchased the claim were not officers or employees of the court, and the prohibition contained in Art. 2447 C. C. does not apply to them.

The nullity, if it existed, is relative, and a civil action is necessary to have it so declared. All parties in interest must be cited, and it can not therefore be attacked collaterally. New Orleans Gas Light Co. vs. Webb, 7 An. 168.

There is nothing in the record which would justify a disturbance of the judgment.

Judgment affirmed.