PNC BANK, N.A. *v.* GEORGE S. KELEPECZ ET AL.
(SC 18129)

Katz, Palmer, Vertefeuille, Zarella and Sullivan, Js.

Argued May 20—officially released December 16, 2008

*Bruce L. Elstein*, with whom, on the brief, was *Henry Elstein*, for the appellant (defendant Helen Szondy).

*Stephen G. Walko*, for the appellee (defendant CB Richard Ellis, Inc.).

*Alan R. Spirer*, for the appellee (defendant Nancy I. Powell).

VERTEFEUILLE, J. This appeal arises from the determination of priorities in a mortgage foreclosure action brought by the plaintiff, PNC Bank, N.A., against the defendants, George S. Kelepecz, the owner of the mortgaged premises, and subsequent encumbrancers CB Richard Ellis, Inc. (Ellis), Nancy I. Powell, and Helen Szondy.[1] The principal issue on appeal is whether the trial court properly determined that a judgment lien recorded by Ellis, formerly known as CB Commercial Real Estate Group, Inc., is valid when: (1) the judgment lien certificate fails to set forth the original amount of the money judgment secured by the lien as required by General Statutes § 52-380a (a);[2] and (2) Ellis allegedly failed to provide notice of the filing of the lien to the judgment debtor, Kelepecz, in compliance with General

[1] Videira's Paving Corporation, AT&T, Unifund CCR Partners, Challenger Financial Services, LLC, and the department of revenue services also were named as defendants in the foreclosure action, but are not parties to this appeal.

[2] General Statutes § 52-380a (a) provides: "A judgment lien, securing the unpaid amount of any money judgment, including interest and costs, may be placed on any real property by recording, in the town clerk's office in the town where the real property lies, a judgment lien certificate, signed by the judgment creditor or his attorney or personal representative, containing: (1) A statement of the names and last-known addresses of the judgment creditor and judgment debtor, the court in which and the date on which the judgment was rendered, and the original amount of the money judgment and the amount due thereon; and (2) a description, which need not be by metes and bounds, of the real property on which a lien is to be placed, and a statement that the lien has been placed on such property."

Statutes § 52-351a.[3] We conclude that the trial court properly determined that the judgment lien was valid, and, accordingly, we affirm the judgment of the trial court.

The following undisputed facts and procedural history are necessary to our resolution of this appeal. In 1987, Kelepecz, the owner of real property located at 231-233 Roseville Terrace in Fairfield (property), mortgaged the property to the plaintiff's predecessor in interest. On September 8, 1992, Ellis obtained a money judgment against Kelepecz. To secure that judgment, Ellis placed a judgment lien on the property, which was recorded on October 7, 1992. Thereafter, on June 24, 1996, Powell recorded a mortgage on the property to secure the amount of $213,000. On October 8, 1996, Szondy recorded a mortgage on the property to secure the amount of $90,000.

In February, 2002, the plaintiff brought the underlying mortgage foreclosure action that gave rise to this appeal. The trial court thereafter rendered judgment of foreclosure by sale, and an auction sale occurred in December, 2004, at which the high bid was $405,000. The trial court subsequently approved the committee sale of the property for that amount.

The plaintiff then filed a motion for supplemental judgment, which was granted by the trial court, resulting in payment to the plaintiff of $192,479.53 from the proceeds of the sale. Thereafter, Ellis and Powell also filed a motion for a supplemental judgment and determination of priorities with the trial court. Szondy

---

[3] General Statutes § 52-351a provides: "When a lien is placed on any property or when any postjudgment paper, other than a wage execution or property execution levied against property of a natural person, is served on a third person, the judgment creditor shall send a copy of the lien, or of the papers so served, together with a statement as to where the lien was filed or on whom the papers were served, to the judgment debtor at his last-known address by first class mail, postage prepaid."

then filed her own motion for determination of priorities and an objection to Ellis and Powell's motion for supplemental judgment. Szondy asserted that neither the judgment lien held by Ellis nor the mortgage held by Powell was entitled to priority over her mortgage on the property.

After submission of briefs by the parties and oral argument on the motions, the trial court determined that the plaintiff's mortgage was first in priority on the property and that the plaintiff properly had received $192,479.53 of the proceeds from the foreclosure sale. It further concluded that Ellis' judgment lien was second in priority and that Ellis was entitled to $206,608.16 from the sale proceeds, which constituted the balance of the proceeds from the foreclosure sale.[4] The trial court further determined that Powell's mortgage was third in priority, but that she was not entitled to receive any funds from the foreclosure sale because they had been exhausted. This appeal by Szondy followed.[5]

I

Szondy first claims that the trial court improperly determined that the judgment lien held by Ellis was entitled to priority over her mortgage on the property.

[4] Although the record is unclear, the apparent discrepancy between the amount of the highest bid and the amounts paid to the plaintiff and Ellis is due to the expenses incurred in the foreclosure sale and court costs.

[5] Szondy appealed from the judgment of the trial court to the Appellate Court. After hearing oral argument in this matter, the Appellate Court filed a request to transfer the appeal to this court pursuant to Practice Book § 65-2. The Appellate Court explained that the reason for the requested transfer was the need to decide the question of "whether the omission of the monetary amount in the judgment lien certificate is fatal to the enforceability of the judgment lien or whether the omission was a mere scrivener's error that does not affect the order of priorities among the junior lien holders. The issue presents a matter of great public importance as the resolution of the case affects real estate titles in the state of Connecticut." We then transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

Specifically, Szondy asserts that Ellis' judgment lien was invalid because the lien certificate failed to comply with the requirements of § 52-380a in that it did not set forth the original amount of the money judgment secured by the lien. In response, Ellis asserts that the lien certificate in the present case is valid and enforceable because it provides sufficient notice to third parties of the existence of the lien, thereby satisfying the purpose of § 52-380a. We agree with Ellis.

We begin by setting forth the applicable standard of review. Whether a judgment lien is valid generally involves a mixed question of fact and law. See, e.g., *Lindholm* v. *Brant*, 283 Conn. 65, 77, 925 A.2d 1048 (2007) (question involving application of legal standards in governing statutes to underlying historical facts presents mixed question of fact and law). In the present case, however, there is no dispute as to the facts found by the trial court with regard to Ellis' lien. Rather, the dispute arises from the trial court's application of § 52-380a to those facts. Accordingly, our review of this issue of law is plenary. See, e.g., *Charles* v. *Charles*, 243 Conn. 255, 258, 701 A.2d 650 (1997) (application of statute to undisputed facts subject to plenary standard of review), cert. denied, 523 U.S. 1136, 118 S. Ct. 1838, 140 L. Ed. 2d 1089 (1998).

Section 52-380a (a) sets forth the requirements for a judgment lien filed to secure the unpaid amount of any money judgment, including interest and costs. "A judgment lien, securing the unpaid amount of any money judgment, including interest and costs, may be placed on any real property by recording, in the town clerk's office in the town where the real property lies, a judgment lien certificate, signed by the judgment creditor or his attorney or personal representative, containing: (1) A statement of the names and last-known addresses of the judgment creditor and judgment debtor, the court in which and the date on which the

judgment was rendered, and *the original amount of the money judgment* and the amount due thereon; and (2) a description, which need not be by metes and bounds, of the real property on which a lien is to be placed, and a statement that the lien has been placed on such property." (Emphasis added.) General Statutes § 52-380a (a).

The judgment lien certificate in the present case[6] provides in relevant part: "This is to certify that CB Commercial Real Estate Group, Inc., of 177 Broad Street, Stamford, Connecticut, on the 8th day of September, 1992, in the Superior Court holden at 1061 Main

---

[6] The judgment lien certificate filed by Ellis provides as follows: "This is to certify that CB Commercial Real Estate Group, Inc., of 177 Broad Street, Stamford, Connecticut, on the 8th day of September, 1992, in the Superior Court holden at 1061 Main Street, Bridgeport, Connecticut, in the [j]udicial [d]istrict of Fairfield, did obtain a [j]udgment in its favor, against George S. Kelepecz, of 231 Roseville Terrace, Fairfield, Connecticut, for the sum of _____ damages, which [j]udgment remains wholly unsatisfied; and to secure said sums, a judgment lien in favor of said CB Commercial Real Estate Group, Inc. is hereby placed upon the following-described real . . . estate of the said George S. Kelepecz, situate[d] in the [t]own of Fairfield, [c]ounty of Fairfield to wit:

"All that certain piece of parcel of land, together with the buildings and improvements located thereon, situated in the [t]own of Fairfield, [c]ounty of Fairfield and [s]tate of Connecticut, being known and designated as Lot No. 10 on a certain map entitled 'Map of Fairfield Acres, Section No. 1 Fairfield, Conn.,' dated July 14, 1941 and on file in the Fairfield [t]own [c]lerk's [o]ffice as Map No. 1440, to which map reference is hereby made, said premises being bounded and described as follows:

"Northerly: By Roseville Terrace as shown on said map, 60 feet;

"Easterly: by land now or formerly of Pizzuto and Lopes, Lot No. 11 on said map, 162.54 feet;

"Southerly: by land now or formerly of Joseph W. and Marian K. Bodges, Lot No. 19 on said map, 41 feet;

"Westerly: by land now or formerly of Marguerite D. Davies, Lot No. 22 in part, and in part by land now or formerly o[f] Gustave O. and Jeanne K. Jacobsen, Lot No. 9 on said map, in all, 179.26 feet.

"Said premises are also known as 231 Roseville Terrace.

"Being the same premises conveyed to Bengt W. Jacobson and Martha E. Jacobson by deed dated August 11, 1948 in [v]olume 226, page 328.

"pursuant to Section [52-380a] of the Connecticut General Statutes.

"Dated at Stamford, Connecticut, this 29th day of September 1992."

Street, Bridgeport, Connecticut, in the [j]udicial [d]istrict of Fairfield, did obtain a [j]udgment in its favor, against George S. Kelepecz, of 231 Roseville Terrace, Fairfield, Connecticut, for the sum of _____ damages, which [j]udgment remains wholly unsatisfied; and to secure said sums, a judgment lien in favor of said CB Commercial Real Estate Group, Inc. is hereby placed upon the following-described real . . . estate of the said George S. Kelepecz, situate[d] in the [t]own of Fairfield . . . ." There is no dispute that this judgment lien certificate does not contain the original amount of the judgment. The question that we must decide is whether the trial court properly concluded that the lien was enforceable despite the failure of the certificate to set forth the original amount of the judgment.[7]

Neither this court nor the Appellate Court previously has addressed the consequences of the failure to comply with the requirements of § 52-380a with regard to a judgment lien certificate. Szondy asserts that judgment liens are solely creatures of statute and in derogation of the common law, and, therefore, § 52-380a must be strictly construed. Failure to comply with a statutory requirement, she contends, is fatal to the lien. In support of her claim, Szondy relies on cases in which this court has invalidated mechanic's liens for failure to comply with the applicable statute. She also contends that our case law regarding mortgages is inapposite because mortgages have their origins in the common law. In response, Ellis asserts that our cases regarding omissions in the context of mortgages are instructive for the present case. We agree with Ellis.

---

[7] We understand Szondy's claim to be that the judgment lien fails to comply with § 52-380a because it fails to set forth the amount of the money judgment obtained by Ellis. To the extent that Szondy asserts that the judgment lien is invalid because it fails to state the amount *due* on the judgment, we disagree. The judgment lien certificate states that the "[j]udgment remains wholly unsatisfied," and thus adequately sets forth the amount due on the judgment.

We recognize that "[i]n our state the right to file a valid judgment lien is wholly a creature of the statute. The conditions precedent to the validity of such a lien are all prescribed by statute. Conditions not so prescribed are not essential to the validity of the lien. Considerations drawn from the nature of a judgment lien at common law or under statutes differing from ours, can aid us very little, if at all, in the construction of our own statute." *Hobbs* v. *Simmonds*, 61 Conn. 235, 238, 23 A. 962 (1891); see also *Mac's Car City, Inc.* v. *DiLoreto*, 238 Conn. 172, 177, 679 A.2d 340 (1996) ("Judgment liens are creatures of statute. They did not exist before 1878.").

Nevertheless, we disagree with Szondy that the judgment lien statute is in derogation of the common law. The judgment lien was created by statute in 1878. "Prior to 1878 our statutes recognized only one method of enforcing [a monetary judgment]: that was by means of a levy of execution. . . . The levy of execution was an inadequate remedy for both debtors and creditors. Debtors were burdened by appraisals of their property that were susceptible of being hastily or inadequately conducted. Creditors might find themselves with portions of the debtor's real property that had little or no economic value." (Citations omitted; internal quotation marks omitted.) *Mac's Car City, Inc.* v. *DiLoreto*, supra, 238 Conn. 178. We repeatedly have recognized that "[t]he [judgment lien] act . . . was undoubtedly passed, not to subject to a judgment lien real estate which could not theretofore be taken on the execution which might issue on such judgment, but to provide an additional method of appropriating in satisfaction of such judgment real estate which could by law be taken on such execution; a method 'more economical, convenient and equitable' than that afforded by way of execution." *Hobbs* v. *Simmonds*, supra, 61 Conn. 239, quoting *Beardsley* v. *Beecher*, 47 Conn. 408, 412 (1879). The

predecessor to § 52-380a therefore provided an additional, more efficient method for enforcing a judgment and was not in derogation of the common law as it existed at that time. The statute therefore is not subject to strict construction.

Moreover, we are not persuaded by Szondy's reliance on cases in which this court has invalidated mechanic's liens for failure to comply with the applicable statute. Keeping in mind that the purpose of the land records is to give constructive notice to the world of instruments recorded therein; *Cowles* v. *Bacon*, 21 Conn. 451, 463 (1852); we conclude that the nature of mechanic's liens is sufficiently distinguishable from the nature of judgment liens so as to make cases involving mechanic's liens inapplicable to the present case. A judgment lien is based on a judicial determination of the amount of the debt owed by the debtor to the creditor and can be independently verified by checking judicial records. A mechanic's lien, on the other hand, is based on a contractor's representation of the amount owed and cannot be independently verified. It follows, therefore, that certain information that may be critical to the enforceability of a mechanic's lien may not be critical to the enforcement of a judgment lien because court records are available as an additional source for necessary information to the judgment lien.

We find that our case law regarding omissions in mortgages is useful in resolving this issue. It is well established "that the recordation of a valid mortgage gives constructive notice to third persons if the record sufficiently discloses the real nature of the transaction so that the third party claimant, exercising common prudence and ordinary diligence, can ascertain the extent of the encumbrance." *Connecticut National Bank* v. *Lorenzato*, 221 Conn. 77, 81, 602 A.2d 959 (1992); see also *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 580, 522 A.2d 763 (1987) (concluding mortgage that

failed to state maximum term of obligation it secured was valid because "[t]he record need not recapitulate all the particulars of a secured obligation, provided it includes enough information to allow subsequent creditors, by common prudence and by the exercise of ordinary diligence, [to] ascertain the extent of the incumbrance" [internal quotation marks omitted]).

"The purpose of the notice requirement is to prevent subsequent third parties from being defrauded or otherwise misled by inaccuracies and omissions in the record that conceal the true nature of the secured obligation." *Dart & Bogue Co.* v. *Slosberg*, supra, 202 Conn. 578. "Errors and omissions in the recorded mortgage that would not mislead a title searcher as to the true nature of the secured obligation do not affect the validity of the mortgage against third parties." Id., 579, citing 2 M. Merrill, Notice (1952) § 1067.

In the present case, Ellis' judgment lien certificate sets forth the name and last known addresses of the judgment creditor and judgment debtor, the court in which the judgment was rendered, including its street address, the date on which the judgment was rendered, and a description of the property on which the lien was to be placed. The lien certificate also included the name and address of the attorney for the judgment creditor. We conclude that, with this information in hand, a party acting with common prudence and ordinary diligence would be able to ascertain the original amount of the judgment secured by the lien, most likely by going to the courthouse identified in the lien and obtaining the information from the file in the clerk's office. Accordingly, we conclude that Ellis' judgment lien was not rendered invalid or unenforceable because it did not contain the original amount of the judgment in the lien certificate as required by § 52-380a. See, e.g., *Connecticut National Bank* v. *Esposito*, 210 Conn. 221, 228, 554 A.2d 735 (1989).

Szondy points out that § 52-380a employs statutory language different from its predecessor statute. Section 52-380a was adopted as part of Public Acts 1983, No. 83-581, and replaced the prior judgment lien statute, General Statutes (Rev. to 1983) § 49-44. That statute previously had provided: "Any suitor having an unsatisfied judgment, obtained in any court of this state or of the United States within this state, may cause to be recorded, in the town clerk's office in the town where the land lies, a certificate signed by the judgment creditor, his attorney or personal representative, *substantially in the form* following . . . ." (Emphasis added.) General Statutes (Rev. to 1983) § 49-44. Section 49-44 then set forth a format for a lien certificate. Section 52-380a, which superseded § 49-44, does not contain either the form or the language that the recorded lien must be "substantially" in a particular format. Instead, § 52-380a describes the information to be included in the lien certificate. Nothing in the legislative history of Public Act 83-581 indicates, however, the purpose of the statutory change. See 26 S. Proc., Pt. 8, 1983 Sess., pp. 2551–52. The deletion of the words "substantially in the form following" may have been deleted because the form itself was deleted.

Szondy also contends that this court's decision in *Mac's Car City, Inc.* v. *DiLoreto*, supra, 238 Conn. 172, mandates a finding that the lien in the present case is unenforceable. We disagree. In *Mac's Car City, Inc.*, this court concluded that the plaintiff's failure to file a certificate of judgment lien within four months of the trial court's judgment precluded their subsequent filing of a judgment lien to perfect the attachment. Id., 183. This decision was based on our determination that the four month "relation back" filing period for a judgment lien that relates back to an earlier attachment by the same creditor is entitled to strict construction because this particular provision in the statute benefits judgment

debtors. Id., 179. This court recognized, however, that the judgment lien statute as a whole generally protects the interests of the judgment creditor. Id. The narrow holding of *Mac's Car City, Inc.*, is inapposite with regard to the present case, wherein we have concluded that the omission of the judgment amount from the lien certificate is not a sufficient reason to invalidate the lien where it is challenged by a third party who had sufficient information available on the face of the lien certificate to discover the amount of the judgment secured by the lien.

II

Szondy next claims that the trial court improperly concluded that the judgment lien is enforceable despite Ellis' alleged failure to comply with the notice requirements of § 52-351a.[8] Specifically, Szondy asserts that Ellis failed to provide proper notice of the recording of the lien certificate to the judgment debtor, Kelepecz, and that the lien therefore is invalid. In response, Ellis claims that Szondy, a subsequent encumbrancer, does not have standing to assert a claim of improper notice under § 52-351a. Ellis further asserts that Szondy has failed to demonstrate that it did not comply with the notice requirements of § 52-351a and that Kelepecz had actual notice of the judgment lien based on the stipulation executed by his counsel. We conclude that the trial court properly determined that Szondy lacked standing to assert a claim for failure to comply with § 52-351a.

We begin with some well settled principles regarding standing and its aggrievement component. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary

---

[8] See footnote 3 of this opinion for the text of § 52-351a.

and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation."

(Internal quotation marks omitted.) *Andross* v. *West Hartford*, 285 Conn. 309, 321–22, 939 A.2d 1146 (2008). Standing can be established by proving statutory or classical aggrievement. Id., 322.

In the present case, Szondy's claim is based on Ellis' alleged failure to comply with § 52-351a. Szondy does not assert, however, that she has been authorized by statute to bring a claim under § 52-351a. She therefore must demonstrate that she is classically aggrieved. In other words, she must demonstrate that she has a specific, personal and legal interest that is protected by § 52-351a and that Ellis' conduct has specially and injuriously affected that specific or legal interest. See, e.g., id., 324.

Although Szondy is not claiming statutory aggrievement, the gravamen of her claim nevertheless rests on her contention that she is classically aggrieved by Ellis' failure to comply with the notice provisions of § 52-351a. Therefore, we consider the purpose of the notice requirement, as reflected in the language and legislative history of § 52-351a, to determine whether Szondy, as a subsequent encumbrancer, has a specific personal and legal interest in the notice required by § 52-351a. See, e.g., *Edgewood Village, Inc.* v. *Housing Authority*, 265 Conn. 280, 288, 828 A.2d 52 (2003) (consider purpose of statute requiring notice to determine whether neighboring landowners established classical aggrievement for claim of alleged failure to comply with notice requirements), cert. denied, 540 U.S. 1180, 124 S. Ct. 1416, 158 L. Ed. 2d 82 (2004).

Section 52-351a simply requires that notice be given to the judgment debtor when a certificate of judgment lien is filed against the property of the judgment debtor. Nothing in the language of § 52-351a requires that the judgment lienor give notice to any other party, including those that hold an interest in the property, such as a

mortgage or lien, at the time that the lien certificate is recorded. As a subsequent encumbrancer who had no interest in the property at the time that Ellis' judgment lien was recorded, Szondy cannot demonstrate that § 52-351a was designed to protect any interest of hers or that she has a special, personal and legal interest in the notice requirement of § 52-351a as it relates to the lien certificate in the present case. Furthermore, even if Szondy had been able to demonstrate such an interest in the notice requirement of § 52-351a, her claim fails under the second prong of the classical aggrievement test because she cannot demonstrate how Ellis' alleged failure to provide notice to Kelepecz of the recording of the judgment lien certificate resulted in a direct injury to her. There is no dispute that Ellis' lien had been recorded and was then available for her review at the time that she entered into the mortgage with Kelepecz, approximately four years after the judgment lien certificate was recorded. We therefore conclude that Szondy has failed to establish aggrievement and that she consequently lacks standing to assert a violation of § 52-351a under the facts of the present case.

Our review of case law from other jurisdictions supports this conclusion. In a similar case addressing writs of attachment, the Court of Appeals of Washington concluded that a junior attaching creditor lacked standing to raise a claim that the senior writs of attachment were invalid because they were not accompanied by attachment bonds. *First Interstate Bank of Washington, N.A.* v. *Westcap Forest Products, Inc.*, 74 Wash. App. 900, 903, 876 P.2d 475 (1994). In doing so, the court noted that the attachment statute "require[d] a bond for the benefit of the owner or others having an interest in the attached property at the time of the issuance of the attachment." Id. Accordingly, because the plaintiff had no interest in the attached parcels when the writs were issued, he lacked standing to assert

a claim that the attachments were invalid because of a failure to comply with the statute. Id. Other jurisdictions also have concluded that, in the attachment context, a third party may not assert rights personal to the owner of property in a manner so as to interfere in the relationship between the owner and the creditor. See *Hull* v. *D. Irvin Transport, Ltd.*, 213 Mont. 75, 81, 690 P.2d 414 (1984) ("[d]efects in the issuance of the writs may only be raised and objected to by the defendants in an attachment proceeding"); *Strawberry Growers' Selling Co.* v. *Lewellyn,* 158 La. 303, 306, 103 So. 823 (1925) ("We are also of [the] opinion that an intervening creditor cannot plead peremptory exceptions, the only object of which is to have the cause dismissed for irregularities in the proceedings. These were matters for the consideration of the defendants, or those who represented them, and if they thought fit to waive a defense which should not be used in a just action, no other party can. It is exercising rights which do not belong to him, and which no law that we are acquainted with confers." [Internal quotation marks omitted.]); *Galloway* v. *Levitt,* 135 So. 2d 798, 801 (La. App. 1961) ("[I]n an attachment suit the intervener will not be permitted to urge defenses personal to the defendants. . . . The intervener is limited to the assertion of his own rights, to show that the property attached is his, that he has a superior privilege on it, or . . . [that] the plaintiffs and defendants perpetrated a fraud in the issuance of the attachment in order to defeat his pursuit of the property." [Internal quotation marks omitted.]), quoting *Gilkerson-Sloss Commission Co.* v. *Bond & Williams,* 44 La. Ann. 841, 843, 11 So. 220 (1892); see also 6 Am. Jur. 2d, Attachment and Garnishment § 310 (2008) ("[d]efects in the issuance of writs of attachment may only be raised and objected to by the defendant in an attachment proceeding; none-

theless, a third party is entitled to assert its interest in the attached property").[9]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[9] In this appeal, Szondy also raised other claims regarding the trial court's conclusion with regard to Powell's mortgage. At oral argument, however, Szondy conceded that these claims would be moot if we were to conclude that Ellis' judgment lien was valid. In light of our conclusion herein, we therefore do not address Szondy's other claims.