350 Conn. 347     NOVEMBER, 2024     347

PPC Realty, LLC *v.* Hartford

# PPC REALTY, LLC *v.* CITY OF HARTFORD
## (SC 20826)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Dannehy, Js.

*Syllabus*

The defendant city appealed from the judgment of the trial court, which granted the plaintiff property owner's application to discharge a lien that the city had placed on the plaintiff's property pursuant to the relevant provisions (§§ 8-268 and 8-270) of the Uniform Relocation Assistance Act, in connection with the city's efforts to recover costs that it incurred when it relocated the tenants of the plaintiff's apartment building, which was destroyed by an act of arson and condemned under the city's building code. The city claimed that the trial court had incorrectly determined that the lien was invalid on the ground that the plaintiff's tenants were displaced as a result of a third party's arson and not the city's enforcement of its building code. *Held*:

The tenants were "displaced persons," as defined by statute (§ 8-267 (3) (B)), because, even though the fire that displaced them was not the plaintiff's fault, their displacement was a direct result of the city's enforcement of its building code.

The trial court improperly allowed the plaintiff to challenge the validity of the lien by asserting an affirmative defense contemplated by the provision (§ 8-270a) of the act that allows a municipality or the state to recover relocation expenses from a landlord by bringing a civil action, as that affirmative defense is available to a landlord only in a civil action brought by a municipality or the state under § 8-270a and cannot be invoked in support of an application to discharge a lien filed pursuant to §§ 8-268 and 8-270.

(*One justice concurring separately*)

Argued March 25—officially released August 12, 2024*

*Procedural History*

Application to discharge a certificate of lien filed by the defendant on certain of the plaintiff's real property, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Hon. Robert B. Shapiro*, judge trial referee, who, exer-

* August 12, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

PPC Realty, LLC *v.* Hartford

cising the powers of the Superior Court, rendered judgment discharging the lien, from which the defendant appealed. *Reversed*; *judgment directed.*

*David R. Roth*, with whom were *Aaron S. Bayer* and, on the brief, *Nathan Guevremont* and *Demar G. Osbourne*, assistant corporation counsel, for the appellant (defendant).

*Michael J. Barnaby*, for the appellee (plaintiff).

*Kirk Tavtigian* filed a brief for the New England Legal Foundation as amicus curiae.

*Karen L. Dowd* and *Michael A. Lanza* filed a brief for the Connecticut Association of Public Insurance Adjusters as amicus curiae.

*Evan K. Buchberger*, *Jane Kelleher*, *Nilda R. Havrilla*, *Giovanna Shay* and *Shelley White* filed a brief for Connecticut Legal Services et al. as amici curiae.

*Opinion*

D'AURIA, J. In this appeal, we must interpret provisions of the Uniform Relocation Assistance Act (act), §§ 8-266 through 8-282, also known as the URRA, to determine whether a city can maintain a lien against a property to secure repayment of costs incurred when relocating residents who find themselves displaced following the city's enforcement of its building codes, even if the property owner did not cause the building to become uninhabitable. The defendant, the city of Hartford, contends that the trial court improperly discharged its lien on the property of the plaintiff, PPC Realty, LLC. Relying on the statutory text of the act, we agree with the defendant that its lien was proper, and we reverse the trial court's judgment.

The following undisputed facts and procedural history relate to the defendant's claim on appeal. The plaintiff owns real property located at 820 Wethersfield

PPC Realty, LLC *v.* Hartford

Avenue in Hartford, which was improved with a three story apartment building with forty residential units. On March 7, 2019, at approximately 7:18 a.m., a third party started a fire on the second floor of the apartment building. Both parties have stipulated that the fire was not the fault of the plaintiff or any apartment resident. The third party was later convicted of arson for starting this fire.

The ensuing blaze caused water, smoke, and fire damage, rendering the apartment units uninhabitable immediately and for the foreseeable future. Less than one hour later, at approximately 8 a.m. that same day, the defendant provided the plaintiff with a "Notice Violation/Emergency and Order to Abate," which stated that the defendant was condemning the property and ordering all residents to vacate their units until the apartment building was repaired. The defendant placed a placard on the plaintiff's property declaring the building "[u]nfit for [h]uman [o]ccupancy." At the time of the fire, residents occupied thirty-nine of the building's forty apartment units. Important to the dispute before us, the defendant provided shelter and relocation services to all residents who lived in these units. The plaintiff does not contest the necessity of the defendant's actions in response to this emergency.

The day after the fire, the defendant filed a lien on the plaintiff's property pursuant to General Statutes §§ 8-268 and 8-270. The lien provided that it was "for all reimbursable relocation assistance expenses, including, if any, but not limited to, ongoing expenses for temporary housing (hotel rental fees), moving, storage and insurance of personal property, and replacement housing made by the [defendant] to or on . . . behalf [of] certain tenants displaced from said [p]remises due to violation(s) of the [c]ity of Hartford [h]ousing, [b]uilding, [h]ealth, and/or [f]ire [c]odes." The defendant later filed an updated lien, specifying that the relo-

PPC Realty, LLC *v.* Hartford

cation assistance it had provided to the building's residents amounted, cumulatively, to $274,564.95. The defendant "further claim[ed] a lien on said premises . . . against the proceeds of any policy of insurance providing coverage for loss or damage caused by fire, if a loss or damage has occurred." At the time of the fire, the plaintiff maintained a fire insurance policy for up to $5 million in property damage. From this coverage, the plaintiff and a property mortgagor jointly received $1.6 million in insurance proceeds. The plaintiff has stipulated that it is unaware of any evidence that its insurance provider ever contacted the town clerk's office about whether liens existed on the property.

On March 11, 2019, the defendant also sent the plaintiff a letter explaining that "[t]he [defendant] must be reimbursed for all relocation costs related to these displaced tenants." The plaintiff's counsel "strenuously object[ed]" to the defendant's position and requested that the defendant discharge the lien. The plaintiff contended that "[it] did not violate any code requiring *enforcement* by the [defendant]. Instead, the structure was rendered unsafe as a result of the criminal action of a third party." (Emphasis in original.)

The plaintiff filed an application in the trial court to discharge the defendant's lien pursuant to General Statutes § 49-51 and also requested that the court enjoin the defendant from taking further action against the property or insurance proceeds in accordance with General Statutes § 52-471 et seq. The plaintiff asserted that there was no "probable cause to sustain the validity of the lien" under § 49-51.[1] Because the plaintiff's arguments centered around the legal interpretation of the act's provisions, the parties stipulated to the underlying facts and tried the case to the court.

---

[1] The plaintiff initially filed what it has described as two "identical actions" to discharge the defendant's lien, which the court later consolidated.

PPC Realty, LLC *v.* Hartford

The trial court issued a memorandum of decision, ruling in the plaintiff's favor and finding "by clear and convincing evidence, and as a matter of law . . . [t]hat the invalidity of the [defendant's] lien is established." The court stated: "[I]t is undisputed that arson led to the displacement of the tenants, not municipal code enforcement activities based on the landlord's violations of any code. The statutory liens authorized by the [act] are not applicable in this context."[2] The trial court's apparent reasoning was consistent with the plaintiff's position that, because the plaintiff's actions did not cause the fire, the residents were not displaced as a direct result of the defendant's condemnation of the building, thereby preventing the defendant from recovering relocation costs under the act.

The trial court explained that the interplay of General Statutes §§ 8-268, 8-270 and 8-270a supported its determination that the lien was improper because the plaintiff's actions did not cause the displacement of the apartment building's tenants. In particular, the court pointed out that, although §§ 8-268 and 8-270 allow a municipality to file a lien to recover relocation costs from a landlord, § 8-270a provides that, if a city has brought a civil action against a landlord under the act to recover displacement costs, "it shall be an affirmative defense for the landlord that the displacement was not the result of the landlord's violation of [General Statutes §] 47a-7." The court recognized that the proceeding before it was not a civil action brought by the defendant but nonetheless ruled that the plaintiff could invoke § 8-270a because, otherwise, "inconsistent outcomes would occur even [if the] cases were based on very similar facts," and "[t]he legislature cannot have intended such inconsistent, bizarre results." The defendant appealed

---

[2] The trial court also held that the defendant's lien was invalid under General Statutes §§ 49-73a and 49-73b. The defendant has not relied on these statutes in this appeal.

PPC Realty, LLC *v.* Hartford

to the Appellate Court, and we transferred the case to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The defendant raises only one issue on appeal: whether, under the act, it properly filed a lien on the plaintiff's property as a means of facilitating the recovery of costs from the plaintiff that the defendant incurred for relocating residents displaced following the defendant's enforcement of building codes, even if it was not the plaintiff's actions that rendered the building uninhabitable. To answer this question, we first consider whether the plaintiff's tenants fell under the act's definition of "displaced persons." See General Statutes § 8-267 (3). Because we conclude that the plaintiff's tenants indeed constituted displaced persons under the act, we must analyze whether, in response to the defendant's lien, the plaintiff can raise its claim that it did not cause the property damage that resulted in the tenants' displacement.

I

The first question we must resolve is whether the plaintiff's tenants were "displaced persons," as contemplated by § 8-267 (3) (B), which defines a "displaced person" in relevant part as "any person who so moves as the direct result of code enforcement activities . . . ." The parties' dispute centers on whether the plaintiff's tenants constituted displaced persons under the act, even though the fire was not the plaintiff's fault. The defendant argues that the trial court erred because the relocation assistance that a city provides and a landlord is liable for under the act "does not turn on what started the causal chain that ultimately led to the residents' displacement" but focuses on whether a city had to engage in code enforcement activities. The plaintiff responds that the trial court properly recognized that the act does not apply to the present case because

PPC Realty, LLC *v.* Hartford

a third party's arson, not the defendant's enforcement of the local building code, directly caused the residents' displacement. The plaintiff contends that the arsonist caused the tenants' displacement because it was the fire and smoke that first prompted residents to leave the building, and the defendant posted notice of code violations after that.

These statutory questions arise out of the plaintiff's application under § 49-51 to discharge the defendant's lien. A lien's validity is typically a "mixed question of fact and law." *PNC Bank, N.A.* v. *Kelepecz*, 289 Conn. 692, 697, 960 A.2d 563 (2008). If the underlying facts are undisputed, as they are here, however, the lien's validity presents an issue of law, hinging upon the interpretation of the applicable statutes. See id. Our review is therefore plenary. We interpret statutes pursuant to General Statutes § 1-2z, which directs us "to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Gilmore* v. *Pawn King, Inc.*, 313 Conn. 535, 542–43, 98 A.3d 808 (2014).

In our view, § 8-267 (3) (B) unambiguously provides that it was the defendant's enforcement of building codes that triggered the act's protections. A plain reading of § 8-267 (3) (B) reveals that a displaced person is one "who . . . moves as the direct result of code enforcement activities . . . ." As this court has previously recognized when considering who is a "displaced person" under the act, there will always be an underlying cause that initially brought about the need for building code enforcement. See *Dukes* v. *Durante*, 192 Conn. 207, 221, 471 A.2d 1368 (1984) ("[w]hether condemnation results from burst pipes or falling ceil-

ings, the result is an unsound structure"). We do not read this definitional statute to concern itself with the specific root cause of how a building became uninhabitable. Any number of reasons might lead a municipality to exercise its police powers to protect its citizenry by ordering residents to move out of a building, rendering them "displaced persons" for purposes of the act. See id. ("[i]ndeed, in those buildings where displacement is necessary, the nomenclature of the violations is irrelevant"). The act's definition of "displaced person" does not concern itself with fault but instead focuses on the status of the tenants. These clear, threshold determinations do not require further inquiry into why unhabitable conditions came to displace the building's residents.

As applied to the present case, it is undisputed that a third party's arson left the plaintiff's property in a state that violated the defendant's building codes. Indeed, the plaintiff acknowledges that the defendant's emergency intervention was necessary in the aftermath of the fire. It is also undisputed that less than one hour after the fire occurred, the defendant issued a document titled "Notice Violation/Emergency and Order to Abate," which instructed all residents to vacate their units because the building was "[u]nfit for [h]uman [o]ccupancy." Once the defendant issued that order, the residents became displaced as a "direct result of code enforcement activities" under § 8-267 (3) (B). This is the most sensible reading in light of the legislatively declared purpose of the act, which includes "establish[ing] a uniform policy for the fair and equitable treatment of persons displaced . . . by building code enforcement activities . . . ." General Statutes § 8-266. Even though the arson destroyed the property, there was some danger that residents of the building would seek to return if they had no other place for shelter. It was the defendant's code enforcement that directly resulted in the displacement of the tenants.

350 Conn. 347 NOVEMBER, 2024 355

PPC Realty, LLC *v.* Hartford

Although damage from the fire made the apartment building uninhabitable physically and legally, those two determinations are not always necessarily one and the same. For example, the existence of mold growing in an apartment building might make the building legally uninhabitable; see General Statutes § 47a-7; but may go unnoticed by residents who might choose to stay in the building despite the health risk because they have no other shelter options. In this scenario, too, it would not be the underlying cause behind the code violation (the mold) that prompted residents to move. Rather, if the defendant, in enforcing its code, ordered that residents could not occupy the building, the residents would be displaced as a "direct result" of the code enforcement. General Statutes § 8-267 (3) (B). This reality underscores the shortcomings of the plaintiff's logic and further supports an interpretation of § 8-267 (3) (B) that considers only code enforcement activities when determining the cause of displacement under the act.

Thus, we disagree with the trial court that the residents "move[d]" from the building "as the direct result of" arson, not "as the direct result of [the defendant's] code enforcement activities . . . ." General Statutes § 8-267 (3) (B). Rather, under the act, the defendant's code enforcement activities displaced the residents of 820 Wethersfield Avenue on March 7, 2019.

II

Next, we consider whether it is procedurally proper for the plaintiff to claim that the defendant's lien was invalid because the displacement of the residents was not the result of the plaintiff's violation of § 47a-7.[3] The

---

[3] General Statutes § 47a-7 (a) outlines a landlord's responsibilities and provides in relevant part: "A landlord shall: (1) Comply with . . . all applicable building and housing codes materially affecting health and safety of both the state or any political subdivision thereof; (2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition, except where the premises are intentionally rendered unfit or uninhabitable by the tenant, a member of his family or other person on the

PPC Realty, LLC *v.* Hartford

plaintiff contends that § 8-270a permits it to assert, in support of its application to discharge the lien, that the plaintiff cannot be liable under § 47a-7 because it did not cause the fire that displaced the tenants. In response, the defendant contends that the plaintiff cannot apply to discharge the lien because § 8-270a makes clear that a § 47a-7 argument is available only as an affirmative defense to a civil action filed by a municipality to recover from a landlord payment the municipality has made on behalf of displaced residents. We agree with the defendant.

As we did in part I of this opinion, we exercise plenary review over the trial court's interpretation of §§ 8-268, 8-270 and 8-270a. The plain meaning rule continues to guide this portion of our analysis. See General Statutes § 1-2z; *Gilmore* v. *Pawn King, Inc.*, supra, 313 Conn. 542–43. In addition, we note that, "if possible, the component parts of a statute should be construed harmoniously in order to render an overall reasonable interpretation." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Education*, 278 Conn. 326, 333, 898 A.2d 170 (2006). However, we cannot go so far as to import additional provisions into statutory schemes in an effort to create greater harmony or consistency than the terms of the statute permit. See, e.g., *Battersby* v. *Battersby*, 218 Conn. 467, 470, 590 A.2d 427 (1991) ("When language used in a statute is clear and unambiguous, its meaning is not subject to modification or construction. . . . Absent ambigu-

_____

premises with his consent, in which case such duty shall be the responsibility of the tenant; (3) keep all common areas of the premises in a clean and safe condition; (4) maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating and other facilities and appliances and elevators, supplied or required to be supplied by him; (5) provide and maintain appropriate receptacles for the removal of ashes, garbage, rubbish and other waste incidental to the occupancy of the dwelling unit and arrange for their removal; and (6) supply running water and reasonable amounts of hot water at all times and reasonable heat . . . ."

PPC Realty, LLC *v.* Hartford

ity, the courts cannot read into statutes, by construction, provisions that are not clearly stated.” (Citation omitted; internal quotation marks omitted.)).

With these principles in mind, we turn to the language of the specific provisions of the act at issue, §§ 8-268, 8-270 and 8-270a. In Public Acts 1982, No. 82-399, §§ 1 through 3 (P.A. 82-399), the legislature amended §§ 8-268 and 8-270, and enacted § 8-270a. The legislature amended §§ 8-268 and 8-270 to contain this identical language: “[*W*]*henever any tenant in any dwelling unit is displaced as the result of the enforcement of any code* to which this section is applicable by any town, city or borough or agency thereof, the landlord of such dwelling unit shall be liable for any payments made by such town, city or borough pursuant to this section . . . .” (Emphasis added.) General Statutes § 8-268 (a); accord General Statutes § 8-270 (a); see also P.A. 1982, No. 82-399, §§ 1 and 2. Section 3 of P.A. 82-399, now codified at § 8-270a, provides in relevant part: “If any landlord fails to reimburse any town, city or borough for any payments which the town, city or borough has made to any displaced tenant and for which the landlord is liable pursuant to section 8-268, as amended by section 1 of this act, or section 8-270, as amended by section 2 of this act, such town, city or borough may bring a civil action against such landlord in the superior court . . . for the recovery of such payments . . . . *In any such action, it shall be an affirmative defense for the landlord that the displacement was not the result of the landlord’s violation of section 47a-7 . . . .*” (Emphasis added.)

Thus, the legislature has plainly provided that, in the first instance, pursuant to §§ 8-268 (a) and 8-270 (a), a landlord is liable to the municipality for payments the municipality has made to or on behalf of displaced residents. Both parties acknowledge that a plain reading of these statutes allows municipalities to take at least

two actions to secure the recovery of their relocation expenses from a landlord: they can place a lien on a landlord's property under §§ 8-268 (a) and 8-270 (a), and they can commence a civil action under § 8-270a. As an affirmative defense to the civil action, the final sentence of § 8-270a permits a landlord to avoid liability if the displacement was not the result of the landlord's violation of § 47a-7. The question before us is whether the plaintiff can invoke the *shield* provided in this final sentence of § 8-270a and use it as a *sword* in this application to render the lien invalid.

We conclude that the text of §§ 8-268 (a) and 8-270 (a) unambiguously forecloses the plaintiff's use of the affirmative defense provided by § 8-270a in connection with its application to declare invalid and to discharge the defendant's lien. The legislature provided § 8-270a only as an affirmative defense to a civil action seeking to recover relocation costs. It did not include any similar language in §§ 8-268 and 8-270, which permit a municipality to place a lien on the property. We cannot second-guess the legislature's policy decision to permit a municipality to impose a lien without permitting resistance to it by a landlord. In short, the plaintiff attempts in this action to take advantage, prematurely, of an affirmative defense it might have if the defendant were to bring a cause of action to recover relocation costs. If the legislature had intended to permit a landlord to invoke § 8-270a affirmatively to seek to invalidate a lien, it could have easily said so. See, e.g., *9 Pettipaug, LLC* v. *Planning & Zoning Commission*, 349 Conn. 268, 284, 316 A.3d 318 (2024). To agree with the plaintiff's argument, we would have to graft language onto these statutes that does not exist, which we decline to do. See *State* v. *Wilchinski*, 242 Conn. 211, 232, 700 A.2d 1 (1997) (declining to graft language onto statutes).

The trial court allowed the plaintiff to use the affirmative defense provided in § 8-270a offensively to dis-

PPC Realty, LLC *v.* Hartford

charge the defendant's lien for the sake of making the provisions of the act, in its view, harmonious, and to generate consistent outcomes across cases with similar facts. Although courts should prioritize a harmonious reading of different statutory provisions, we cannot set aside the plain meaning of the terms the legislature provided. See, e.g., *Battersby* v. *Battersby*, supra, 218 Conn. 470. Further, because § 8-270a and relevant portions of §§ 8-268 and 8-270 were promulgated as part of the same public act, we must assume that the legislature intentionally omitted the use of a § 8-270a ground from the act's provisions involving liens. See *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, 277 Conn. 238, 256, 890 A.2d 522 (2006) ("[when] a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" (internal quotation marks omitted)).[4]

---

[4] We note that, even if we determined that the statutory language in question is in any way ambiguous, the relevant legislative history indicates that the legislature passed § 8-270a and the lien provisions in §§ 8-268 and 8-270 with full awareness that landlords would still be liable to municipalities in the first instance for relocation costs in circumstances under which landlords were not at fault.

At the beginning of legislative debate on the matter, Representative Thomas P. Brunnock asked, "if a tenant was the one who had caused the disrepair of the property to result in building code enforcement violations, would the landlord still be ultimately liable for the relocation costs if the relocation was necessitated by those building code violations?" 25 H.R. Proc. Pt. 16, 1982 Sess., pp. 5370–71. Representative Paul J. Garavel responded, "I believe that is true." Id., p. 5371. Representative Robert Farr openly questioned this during ongoing discussions of the amendments: "[Representative] Brunnock properly pointed out in some cases the tenants may have caused it, and perhaps we need an amendment to exclude those cases . . . ." Id., p. 5375. Despite these conversations, P.A. 82-399 was passed, with its proponents stressing that, without its provisions, the statute "has put an absolutely intolerable burden [on] the cities in our state." Id., p. 5390, remarks of Representative Gerard B. Patton. As an example of this, Representative Brunnock referenced the expenses the city of Waterbury faced when a fire required relocating thirty families. Id., pp. 5377–78.

We recognize that this outcome results in a lien existing on the defendant's land records that, in some circumstances, is potentially invalid if the plaintiff were to prevail on its § 8-270a defense and that the plaintiff must wait until it is sued by the defendant to assert this defense.[5] But the legislature has made a clear policy decision to make landlords liable in the first instance for payments made by municipalities under the act, to permit municipalities to enforce this liability through a lien on the property and, finally, to permit a landlord to raise the affirmative defense only when the municipality brings an action against the landlord. See *Adesokan* v. *Bloomfield*, 347 Conn. 416, 446–47, 297 A.3d 983 (2023) ("it is well established that 'the primary responsibility for formulating public policy must remain with the legislature,' " and, "[o]nce the legislature has made its policy choice through statute, we are constrained to interpret the statutory language, not to decide on and implement our own policy choices"). Nor can we conclude, as the trial court did, that our construction of these statutory provisions leads to an absurd or unworkable result. Concluding that a certain construction of statutory provisions is bizarre, absurd, or unworkable is strong medicine. See *Gibbons* v. *Bristol-Myers Squibb Co.*, 919 F.3d 699, 705–706 (2d Cir. 2019) ("[A] statute is not absurd merely because it produces results that a court or litigant finds anomalous or perhaps unwise. To the contrary, courts should look beyond a statute's text under the canon against absurdity only [when] the result of applying the plain language would be, in a genuine sense, absurd, i.e., [when] it is quite impossible that Congress could have intended the result and [when] the alleged absurdity is so clear as to be obvious to most anyone." (Internal quotation marks omitted.)). It

_____

[5] We offer no opinion on whether the plaintiff would prevail on a § 8-270a defense if the defendant were to enforce its lien on the plaintiff's property in a civil action.

PPC Realty, LLC *v.* Hartford

is not difficult to recognize that the act's framework works a balance. In the event that a landlord arguably is not at fault for the displacement of residents from its building, it might not be able to discharge the municipality's lien, and, yet, the municipality might have difficulty foreclosing on the lien or suing on the landlord's liability. In this situation, the municipality and the landlord might be forced to work with the landlord's insurance company or potential lenders to reach a solution that meets everyone's interests: the landlord in reopening a revenue stream from its investment, and the municipality in recovering some of its costs and returning housing stock to the market, with all of the economic and social benefits that flow from such a resolution. It is the legislature's prerogative to address and remedy any perceived inconsistency. See, e.g., *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, 329 Conn. 684, 698 n.18, 189 A.3d 79 (2018) ("[o]f course, as in all cases involving the construction of a statute, if the legislature disagrees with our interpretation . . . it is free to enact legislation" to the contrary). We cannot conclude that the statutes as they exist are either bizarre or unworkable; nor will we import language that we think might make the statutes more workable, or even more rational.[6]

--------

[6] The legislative history of §§ 8-268, 8-270 and 8-270a manifests the concern of some legislators about saddling landlords with relocation costs for displaced tenants; see footnote 4 of this opinion; and of other legislators about saddling cities with these same relocation costs from code enforcement, resulting in a disincentive for cities to provide displaced persons with needed aid in an emergency such as what occurred in this case. See 25 H.R. Proc., Pt. 16, 1982 Sess., pp. 5381–82, remarks of Representative Thomas P. Brunnock ("[C]ertainly the cities find themselves in a paradoxical situation when they look at a building that's substandard and the first question that they have to ask themselves is can we afford to relocate people. And that's really a sad commentary . . . ."). Given these competing concerns, it is unremarkable that the legislature arrived at a solution that does not fully protect landlords or cities from the relocation costs associated with displaced residents.

Because the statutory language clearly establishes that the plaintiff cannot invoke the affirmative defense described in § 8-270a under the procedural posture of this case,[7] a plain reading of the act fully resolves this claim.

The judgment is reversed and the case is remanded with direction to deny the plaintiff's application to discharge the defendant's lien on the plaintiff's property.

In this opinion ROBINSON, C. J., and McDONALD, MULLINS, ALEXANDER and DANNEHY, Js., concurred.

ECKER, J., concurring. I agree with the majority's construction of the Uniform Relocation Assistance Act (URAA), General Statutes §§ 8-266 through 8-282, and its conclusion that the affirmative defense in General Statutes § 8-270a is applicable only in a civil action for the reimbursement of displacement costs, but does not preclude the imposition of a lien on the landlord's property pursuant to General Statutes §§ 8-268 (a) and 8-270 (a). I disagree with the majority, however, that this conclusion is dictated by the plain and unambiguous language of the URAA. In my view, the inclusion of an affirmative defense in § 8-270a, but the exclusion of such a defense in the lien provisions of §§ 8-268 (a) and 8-270 (a), renders the statutory scheme ambiguous because it is plausible that a landlord with a valid affirmative defense under § 8-270a is not "liable for any payments made [under the URAA]" and, therefore, that the lien "to secure repayment to the town, city or borough or the state of such payments" is invalid. General Statutes § 8-268 (a); accord General Statutes § 8-270 (a);

---

[7] Both parties raise additional arguments about whether the plaintiff can assert the affirmative defense in § 8-270a, including whether the plaintiff even violated § 47a-7 in the first place. We do not reach these arguments because we conclude that the affirmative defense set forth in § 8-270a is not available to the plaintiff in this action.

see, e.g., *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 698, 258 A.3d 1268 (2021) (if text of statute "allows for more than one plausible meaning," we "deem it ambiguous for purposes of the [General Statutes] § 1-2z analysis"). See generally *Seramonte Associates, LLC* v. *Hamden*, 345 Conn. 76, 112–118, 282 A.3d 1253 (2022) (*Ecker, J.*, concurring in the judgment) (explaining importance of proper interpretative methodology under § 1-2z).

That said, I am persuaded that the better reading of the relevant statutes resolves this case in favor of the defendant, the city of Hartford. The defendant's construction of the relevant statutes' texts and their interrelationship is more plausible for the reasons ably recited in the majority opinion. My review of extratextual evidence of legislative intent reinforces this view; as the majority observes, "the relevant legislative history indicates that the legislature passed § 8-270a and the lien provisions in §§ 8-268 and 8-270 with full awareness that landlords would still be liable to municipalities in the first instance for relocation costs under circumstances in which landlords were not at fault." Footnote 4 of the majority opinion; see 25 H.R. Proc., Pt. 16, 1982 Sess., pp. 5370–71, remarks of Representatives Thomas P. Brunnock and Paul J. Garavel. Accordingly, I concur in the majority opinion.

––––––––––––––––