******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* ERROL J.*
(AC 42080)

DiPentima, C. J., and Elgo and Moll, Js.**

*Syllabus*

Convicted, after a jury trial, of the crimes of risk of injury to a child in
violation of statute (§ 53-21 (a) (1)) and cruelty to persons in connection
with his actions in beating and whipping the victim, his minor child,
with an electrical cord, the defendant appealed to this court. *Held*:

1. The defendant could not prevail on his claim that the trial court erred
   by restricting his cross-examination of three of the state's expert wit-
   nesses, B, M and W, thereby violating his constitutional right to confron-
   tation: contrary to the defendant's claim that that court improperly
   prevented him from cross-examining B, who had diagnosed the victim
   with post-traumatic stress disorder, about whether she had considered
   alternative diagnoses, the record revealed that the defendant was able
   to inquire of B as to how she reached her diagnosis, to explore whether
   she had considered other disorders and to scrutinize the methods she
   used, and, therefore, the court's ruling on the scope of the defendant's
   cross-examination of B was not constitutionally defective; moreover,
   this court concluded that the trial court did not abuse its discretion
   in sustaining the prosecutor's objections to defense counsel's line of
   questioning with respect to B, as the defendant failed to meet his burden
   of showing that the restrictions imposed on cross-examination were
   clearly prejudicial; furthermore, this court declined to review the defen-
   dant's claims as to M and W, as those claims were not adequately briefed.

2. The defendant's claim that the trial court erred in admitting into evidence
   unredacted medical records and testimony addressing the ultimate issue
   in the case was unavailing: that court did not abuse its discretion because
   it properly admitted the unredacted medical records and related testi-
   mony under the medical diagnosis or treatment exception to the hearsay
   rule, as the medical reports were created by medical practitioners in
   the furtherance of the victim's medical treatment and the testimony
   at issue likewise was related to his medical diagnosis and treatment;
   moreover, the record was inadequate to review the part of the defen-
   dant's claim related to a motion in limine filed by the defendant that
   sought to preclude the state from eliciting testimony from witnesses
   that went to the ultimate issue of whether the defendant abused the
   victim, as there was no indication in the record that the court ruled on
   that motion.

3. The defendant could not prevail on his claim that the prosecutor made
   several improper statements during her closing argument, thereby vio-
   lating his constitutional right to a fair trial:

   a. Contrary to the defendant's claim, the prosecutor did not disparage
   defense counsel, as the challenged statements did not rise to the level
   of improper conduct because they were directed at challenging and
   criticizing the theory of defense that the victim's behavioral issues
   existed before the alleged abuse by the defendant.

   b. The prosecutor did not improperly express her personal opinion and
   allude to facts outside of the evidence; the prosecutor's comment about
   whether the victim's behavioral problems were caused by the defen-
   dant's actions referred to issues addressed in testimony by various
   witnesses throughout the trial, and her comments about why certain
   children are "bad" similarly referred to evidence presented during the
   trial about the victim's behavioral problems stemming from the post-
   traumatic stress disorder caused by the defendant's abuse, and the
   comments encouraged the jurors to draw reasonable inferences from
   the evidence and their own experiences and common knowledge
   about children.

   c. Although the prosecutor's statement comparing the defendant's
   actions to cruel and unusual punishment prohibited by the government
   under the eighth amendment to the United States constitution was a
   misstatement of the law and therefore improper, this court, applying
   the factors set forth in *State* v. *Williams* (204 Conn. 523), concluded

that it did not deprive the defendant of his due process right to a fair trial.

4. The defendant's claim that the trial court erred in failing to give the jury an instruction on the statutory (§ 53a-18 (1)) parental justification defense with respect to the situation prong of the risk of injury to a child charge in count two of the information was unavailing, as that court properly concluded that the defense did not apply to the situation prong of § 53-21 (a) (1): this court declined to extend the holding in *State* v. *Nathan J.* (294 Conn. 243), that the parental justification defense may be applied to conduct under the act prong of § 53-21 (a) (1), to the situation prong of that statute; moreover, the plain language of § 53a-18 (1) demonstrates that the parental justification defense is available only for the specific circumstance in which a defendant uses reasonable physical force that he believes to be necessary to discipline or promote the welfare of a child, and, therefore, it does not apply to the situation prong.

Argued February 6—officially released September 1, 2020

*Procedural History*

Substitute information charging the defendant with two counts each of the crimes of risk of injury to a child and assault in the second degree, and with one count of the crime of cruelty to persons, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, and tried to the jury before *Holden, J.*; verdict and judgment of guilty of two counts of risk of injury to a child and one count of cruelty to persons, from which the defendant appealed to this court. *Affirmed.*

*Alice Osedach*, senior assistant public defender, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *John Smriga*, former state's attorney, *Margaret Kelly*, state's attorney, and *Judy Stevens*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Errol J., appeals from the judgment of conviction, rendered following a jury trial, of two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and one count of cruelty to persons in violation of General Statutes § 53-20 (b) (1). The defendant challenges several of the trial court's evidentiary rulings and jury instructions and raises claims of prosecutorial impropriety. Specifically, he claims that (1) the court erred by restricting his cross-examination of the state's expert witnesses, which violated his constitutional rights to confrontation and to present a defense, (2) the court erred in admitting into evidence certain medical records and testimony, (3) the prosecutor advanced several improper arguments during her closing arguments, violating the defendant's constitutional right to a fair trial, and (4) the court erred in failing to give the parental justification instruction on one of the counts of risk of injury to a child. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Between January 1 and May 27, 2015, the defendant beat or whipped his son, the victim, with an electrical cord. At the time of the injuries, the victim was a student at a Bridgeport school. On May 27, 2015, the victim met with Christopher Mack, a security officer employed by the Bridgeport Board of Education, who worked at the victim's school. In his role there, Mack assisted in maintaining a safe environment at the school and mentoring students. Mack was familiar with the victim from working at the school. When the victim came into the office to meet with Mack on May 27, 2015, Mack noticed that he had a large bump on his head and asked the victim what was on his head. The victim stepped into Mack's office and responded, "I have more, can you keep a secret?" He then lifted up his shirt to show Mack what Mack described as "almost unreal. I noticed . . . slashes across his back, scars, fresh. When I say fresh, I mean, there were still scabs. There were some that were old. But there were so many that I couldn't even count." The victim also showed Mack his side. The school nurse was called to examine the victim. Mack then telephoned the Department of Children and Families (department).

Andrea Sellers, a department investigative social worker, responded to the call from Mack on the hotline for suspected abuse. Once at the school, Sellers reviewed photographs of the victim taken by Mack and spoke to the victim and his siblings, who were also students at the school. Sellers then called the victim's parents and requested that they come to the school. While meeting with Sellers, the defendant admitted to Sellers that he had used a wire to discipline the victim. The children were transported to Southwest Commu-

nity Health Center, and the victim was examined by a nurse there. After it was determined that some of the injuries on the victim were recent, a ninety-six hour hold issued pursuant to General Statutes § 17a-101g and the department took temporary custody of the children.[1]

The record establishes the following procedural history. The defendant was charged in an amended long form information with two counts of risk of injury to a child in violation of § 53-21 (a) (1) (act prong and situation prong), assault in the second degree in violation of General Statutes § 53a-60 (a) (2), assault in the second degree in violation of § 53a-60 (a) (1), and cruelty to persons in violation of § 53-20 (b) (1). Prior to trial, the defendant filed a motion in limine requesting that the court preclude the state from (1) referring to the complainant child as a victim, (2) eliciting information that the department had substantiated allegations of abuse, and (3) using the word "abuse" when describing the child's injuries and eliciting testimony from its witnesses that the child was abused. Following a trial by jury before *Holden, J.*, the defendant was found not guilty of the two counts of assault and was found guilty of the two counts of risk of injury to a child and one count of cruelty to persons. The court sentenced the defendant to a total effective term of fifteen years of incarceration, execution suspended after ten years, with five years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant raises two evidentiary claims. He first claims that the court violated his constitutional rights to confrontation and to present a defense by restricting his cross-examination. Secondly, he claims that the trial court erred in admitting into evidence, over his objection, medical records and testimony that addressed the ultimate issue in the case. We reject both claims.

"The standard to be used to review a trial court's decision on the relevance and admissibility of evidence is abuse of discretion. . . . The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Markeveys*, 56 Conn. App. 716, 718–19, 745 A.2d 212, cert. denied, 252 Conn. 952, 749 A.2d 1203 (2000).

A

The defendant first challenges the court's rulings on the scope of cross-examination in reference to the testimony of three of the state's witnesses: Rebecca Moles, a pediatrician with training in treating victims of child abuse employed at the Connecticut Children's Medical

Center; Ariane Brown, a licensed professional counselor at LifeBridge Community Services who treated the victim in June, 2015; and Natasha Wright, a clinical social worker at the Family and Children's Agency (agency). The defendant argues that the court erred in preventing him from cross-examining Brown about whether she considered alternative diagnoses, in particular, oppositional defiant disorder, when diagnosing the victim. We first briefly address the purported claims as to Moles and Wright.

The defendant's appellate briefs do not adequately identify nor analyze any claims as to Moles and Wright. The defendant does not discuss how the trial court's rulings as to Moles' testimony violated his rights to confrontation and to present a defense. The defendant also only references Wright's testimony; there is no discussion in the briefs as to the prosecutor's objection to the scope of defense counsel's cross-examination of Wright or how the court's ruling was constitutionally defective.[2] "We are not required to review issues that have been improperly presented to this court through an inadequate brief." (Internal quotation marks omitted.) *Bushy* v. *Forster*, 50 Conn. App. 233, 236, 718 A.2d 968 (1998) (citing *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44–45, 699 A.2d 101 (1997)), cert. denied, 247 Conn. 944, 723 A.2d 321 (1998). Therefore, we decline to review these claims.

We turn to the defendant's challenge to the court's restrictions on his cross-examination of Brown.[3] As stated previously in this opinion, the "general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial judge . . . ." (Internal quotation marks omitted.) *State* v. *Reeves*, 57 Conn. App. 337, 346, 748 A.2d 357 (2000). This discretion, however, "comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment." (Internal quotation marks omitted.) Id. To determine if the sixth amendment has been satisfied, we, as the reviewing court, must engage in a two step analysis. We must determine "first whether the cross-examination permitted to defense counsel comported with sixth amendment standards . . . and second, whether the trial court abused its discretion in restricting the scope of that cross-examination. . . . The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Citations omitted; internal quotation marks omitted.) Id. "Once it is established that the trial court's ruling on the scope of cross-examination is not constitutionality defective, this court will apply [e]very reasonable presumption . . . in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) Id., 347. "To establish

an abuse of discretion, [the defendant] must show the restrictions imposed upon [the] cross-examination were clearly prejudicial." (Internal quotation marks omitted.) Id., 346.

The following additional facts are relevant to this claim. In her testimony, Brown described how she arrived at her conclusion that the victim's symptoms were caused by post-traumatic stress disorder (PTSD) through various diagnostic methods, including trauma and feelings assessments. Brown testified that all of the victim's behavioral problems were attributable to his PTSD. On cross-examination, defense counsel returned to the issue of how Brown had arrived at her diagnosis of PTSD. In her questioning, defense counsel asked Brown a number of questions about whether the victim had been "defiant" or failed to follow instructions from adults. Defense counsel then asked a number of questions about whether Brown had considered another disorder called oppositional defiant disorder.[4] The prosecutor objected to this line of questioning, arguing: "[T]his goes well beyond the scope of the direct examination. This [witness] has not testified that she's a psychologist. She has testified that she used this book. She's testified as to her diagnosis, as to the diagnosis that was made at LifeBridge [Community Services], and this goes now into speculation into perhaps other diagnoses that could have or may have been made or maybe I don't know what the whole [gist] of this line of questioning is. However, it goes well beyond the scope of direct examination." In response, defense counsel argued that the defendant was "entitled to present a defense as well as alternative theories as to that kind of mental illness this child may be suffering if any." The court disagreed and sustained the objection. Defense counsel continued this line of questioning, however, and asked: "So, I guess I just want to be clear. You never even considered oppositional defiant disorder as something to test?" The prosecutor immediately objected again, and the court sustained the objection.

Later in cross-examination, defense counsel asked whether Brown had considered "[o]ther diagnostic explanations for [the victim's] behaviors?" The prosecutor objected that the question had been asked and answered. The court agreed but allowed Brown to answer the question. She testified that "the diagnosis that was determined to be the most accurate was [PTSD]." The following exchange then took place:

"Q. So, you did consider other kinds of potential diagnosis from the [Diagnostic Statistical Manual].

"A. You don't go into an assessment assuming the diagnosis. So, everything is considered.

"Q. And that would include several of the other mental illnesses that are described in the DSM, right?"

The prosecutor then objected again to this line of

questioning as going beyond the scope of direct examination. The court sustained the objection, stating, "[i]t does. . . . Other diagnosis; yes, she considered." Defense counsel continued and subsequently asked Brown, "But my question was were there specific illnesses that you . . . ?" The prosecutor objected, arguing that the question had been asked and answered several times. The court again sustained the objection.

The trial court's ruling on the scope of the defendant's cross-examination of Brown was not constitutionally defective. The defendant was able to inquire of Brown how she reached her diagnosis of PTSD. By doing so, the defendant was able to explore whether Brown had considered other disorders before diagnosing the victim with PTSD and to scrutinize the methods that she used in reaching the PTSD diagnosis. Brown testified that she considered "everything" and did not begin her assessment assuming a diagnosis. The sixth amendment right to cross-examination includes the right to an opportunity for cross-examination, not the right to unrestricted cross-examination. See *State* v. *Reeves*, supra, 57 Conn. App. 353. The record reveals that the defendant had the opportunity to criticize Brown's diagnosis of the victim and her methods of achieving this diagnosis. We conclude, therefore, that the defendant's sixth amendment right to cross-examination was not violated.

We now consider whether the court abused its discretion in sustaining the prosecutor's objection. "To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial. . . . Once it is established that the trial court's ruling on the scope of cross-examination is not constitutionally defective, this court will apply [e]very reasonable presumption . . . in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citations omitted; internal quotation marks omitted.) Id., 346–47.

Our review of the record leads us to the conclusion that the court did not abuse its discretion. As discussed previously, the defendant had the opportunity to criticize and challenge Brown's testimony regarding the victim's diagnosis. Additionally, the defendant has the burden of showing that "the restrictions imposed upon [the] cross-examination were clearly prejudicial." (Internal quotation marks omitted.) Id., 355. He has not met that burden. We conclude, therefore, that the trial court did not abuse its discretion and, therefore, did not violate the defendant's sixth amendment constitutional right to confrontation.

B

The defendant's second evidentiary claim is that the trial court erred in admitting into evidence unredacted

medical records and testimony addressing the ultimate issue in the case. The defendant filed a motion in limine before trial that sought to prevent the state from eliciting testimony that went to the ultimate issue the jury was to decide. At trial, the defendant also moved to have medical records proffered by the state redacted. The state responds that the portion of this claim as to the motion in limine is unreviewable because the record is inadequate for review. In support of this argument, the state notes that the record contains no argument on the motion, nor any ruling by the court. We agree with the state that the record is inadequate to review the part of this claim addressed in the motion in limine. We further conclude that the court did not err in admitting into evidence the challenged unredacted medical records and testimony.

The record reveals the following facts relevant to this claim. The defendant filed a motion in limine on April 9, 2018. In the motion, the defendant requested that the state be barred from referring to the complainant as a "victim," eliciting information that the department had substantiated allegations of abuse, eliciting testimony that the defendant was "abusive," using the word "abuse" when describing the complainant's injuries or eliciting testimony in which the word "abuse" is used when describing the complainant's injuries. Neither party has directed us to a written ruling on this motion or a transcript excerpt reflecting an oral ruling.[5]

During the trial, the defendant objected to a number of the exhibits proffered by the state that pertained to the victim's medical records from Southwest Community Health Center in Bridgeport (center) on the grounds that they included the word "abuse" or referred to the defendant's conduct as "abusive."[6] The defendant sought to have these exhibits redacted because they went to the ultimate issue: whether the defendant had abused the victim. Defense counsel also raised a hearsay objection to the medical records. The court denied the defendant's request and determined that the exhibits were admissible under the medical diagnosis or treatment exception to the hearsay rule.[7] See Conn. Code Evid. § 8-3 (5).

Two medical professionals who treated the victim during one of his visits to the center testified about these records. The first was Carolyn Walsh, an advanced practice registered nurse who treated the victim when the department brought him and his siblings to be examined. Regarding the medical report she created for that visit, she testified: "[T]he reason for visit is physical abuse. The symptoms are reported as being physical abuse, evaluation, patient presents to clinic with [department] case worker, mother, and three siblings, following a report of recent abuse by [the defendant] that patient may have disclosed to security guard, head [department] worker and mother. Parents were called

to school two weeks ago for behavioral problems, after which patient reported to school security guard, [the defendant] had beaten him. Police were called to school, but [the defendant] was not arrested on criminal charges, [the department] worker's requesting that patient be evaluated for any signs of possible recent abuse." Walsh further testified from her report about a note dated June 9, 2015, which related to the victim's psychosocial functioning. She testified that the note stated that the "patient with history of significant physical abuse by [the defendant] and subsequent behavioral problems, removed from home and siblings by [the department] on [May 27, 2015]." Defense counsel objected to Walsh's testimony regarding this exhibit by reiterating her earlier objection to the exhibit.[8]

Later in the trial, Dara Richards, a pediatrician at the center, testified about visits the victim had made to the center, specifically, an office visit on July 29, 2015. She read from the report of that visit, which stated under the "present illness" section: "Scars from physical abuse to scalp remains, child was hit in the head multiple times by [the defendant] with electrical cord, largest scar to an occipital region of scalp, still tender and child complains it hurts at times. Children in grandparents' custody now, [the department] on case." Richards further testified from the report: "Patient with history of significant physical abuse by [the defendant] and subsequent behavioral problems, removed from home with siblings by [the department] on May 27, [2015]."

Although the record before this court includes a copy of the motion in limine filed with the trial court and the trial transcript, in which the trial court refers to the motion in limine, the record does not reflect a ruling on the motion by the trial court. The defendant, as the appellant, bears the burden of providing this court with an adequate record for review. See *Chester* v. *Manis*, 150 Conn. App. 57, 61, 89 A.3d 1034 (2014); see also Practice Book § 61-10. Further, "[w]e cannot pass on the correctness of a trial court ruling that was never made." (Internal quotation marks omitted.) *State* v. *McLaughlin*, 135 Conn. App. 193, 202, 41 A.3d 694, cert. denied, 307 Conn. 904, 53 A.3d 219 (2012). Because we are unable to determine that any ruling was made on the motion in limine, we cannot opine on the court's action on the motion. Accordingly, this claim must fail.

Further, the court did not abuse its discretion in denying the defendant's request to have the medical reports from the center redacted when the state moved to admit them into evidence. As discussed previously, the court admitted the exhibits into evidence pursuant to the medical diagnosis or treatment exception to the hearsay rule.[9] Section 8-3 (5) of the Connecticut Code of Evidence, titled "Statement for purposes of obtaining medical diagnosis or treatment," provides an exception to the hearsay rule. It provides: "A statement made for

purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical diagnosis or treatment." Conn. Code Evid. § 8-3 (5). "The admissibility of statements offered under the medical diagnosis and treatment exception to the hearsay rule turns on whether the declarant was seeking medical diagnosis or treatment, and the statements are reasonably pertinent to achieving those ends." (Internal quotation marks omitted.) *State* v. *Estrella J.C.*, 169 Conn. App. 56, 72, 148 A.3d 594 (2016).

The record reflects that the testimony at issue was related to a medical diagnosis or treatment of the victim. The medical reports prepared by medical practitioners at the center were created in furtherance of medical treatment of the victim. Therefore, the records and related testimony were properly admitted under the medical diagnosis or treatment exception to the hearsay rule.[10]

## II

The defendant next claims that the prosecutor made several improper statements during her closing argument, thereby violating the defendant's constitutional right to a fair trial. Specifically, he claims that the prosecutor acted improperly in three ways: (1) by disparaging defense counsel; (2) by expressing her personal opinion and pointing to facts outside of the evidence; and (3) by misstating the law and appealing to the emotions of the jurors. The state argues that the prosecutor did not advance any improper arguments and that, even if this court were to find that she acted improperly, her actions did not deny the defendant his due process rights to a fair trial. We agree with the defendant as to the impropriety of one of the statements made by the prosecutor but conclude that the defendant's right to a fair trial was not violated.

We review the defendant's claims of prosecutorial impropriety under a two step analytical process. "We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial. Whether that impropriety was harmful and thus caused or contributed to a due process violation involves a separate and distinct inquiry. . . .

[T]he touchstone of due process analysis in cases of alleged [harmful] prosecutorial [impropriety] is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's [actions at trial] so infected [the trial] with unfairness

as to make the resulting conviction a denial of due process. . . . In determining whether the defendant was denied a fair trial . . . we must view the prosecutor's [actions] in the context of the entire trial. . . .

[I]t is not the prosecutor's conduct alone that guides our inquiry, but, rather, the fairness of the trial as a whole. . . . [A] determination of whether the defendant was deprived of his right to a fair trial . . . must involve the application of the factors set out . . . in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)." (Internal quotation marks omitted.) *State* v. *Bunn*, 196 Conn. App. 549, 557–58, A.3d , cert. denied, 335 Conn. 918, A.3d (2020). These factors require us to consider "[1] the extent to which the [impropriety] was invited by defense conduct or argument . . . [2] the severity of the [impropriety] . . . [3] the frequency of the [impropriety] . . . [4] the centrality of the [impropriety] to the critical issues in the case . . . [5] the strength of the curative measures adopted . . . and [6] the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Albert D.*, 196 Conn. App. 155, 162, A.3d , cert denied, 335 Conn. 913, A.3d (2020).

### A

The defendant first claims that the prosecutor acted improperly by disparaging defense counsel in three statements. In the first instance, the defendant contends that the prosecutor impugned the role of defense counsel when the prosecutor argued to the jury that evidence proffered by the state was admitted over objections by defense counsel. The defendant also argues that the prosecutor improperly disparaged the role of defense counsel by criticizing her line of questioning when cross-examining Brown.[11] Finally, the defendant claims that the prosecutor disparaged the defense when she argued: "What happened to the child is a tragedy. But here's the bigger tragedy, that he is being blamed and vilified in this courtroom for the unlawful acts of [the defendant]."

"There is a distinction between argument that disparages the integrity or the role of defense counsel and argument that disparages a theory of defense." (Internal quotation marks omitted.) *State* v. *Salamon*, 287 Conn. 509, 558, 949 A.2d 1092 (2008). Our review of the challenged portion of the prosecutor's argument leads us to conclude that these statements were directed at challenging and criticizing the theory of defense that the victim's behavioral issues existed before the alleged abuse by the defendant. Therefore, these arguments do not rise to the level of improper conduct by the prosecutor.

### B

Next, the defendant contends that the prosecutor improperly expressed her personal opinion and alluded

to facts outside of the evidence. Specifically, the defendant directs us to the following statements by the prosecutor: "Were the child's behavior issues as a result of the physical trauma inflicted by the defendant as punishment or was the child born bad? I don't think [that] children are born bad. We are all formed by our environment. Children learn from what they hear or see or experience. No child is born bad. Bad children are made."

"It is well settled that, in addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . The prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Citations omitted; internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 712–13, 793 A.2d 226 (2002). "In deciding cases, however, [j]urors are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion. . . . Therefore, it is entirely proper for counsel to appeal to a jury's common sense in closing remarks." (Internal quotation marks omitted.) *State* v. *Rolli*, 53 Conn. App. 269, 281, 729 A.2d 245, cert. denied, 249 Conn. 926, 733 A.2d 850 (1999).

We conclude that the prosecutor's comments about whether the victim's behavioral problems were caused by the defendant's actions referred to issues addressed in testimony by various witnesses throughout the trial. Additionally, the prosecutor's comments about why certain children are "bad" similarly refer to evidence presented during the trial about the victim's behavioral problems stemming from the PTSD caused by the abuse from the defendant. Finally, the statements do not constitute prosecutorial impropriety. Our Supreme Court has stated: "Although prosecutors generally should try to avoid using phrases that begin with the pronoun 'I,' such as 'I think' or 'I believe,' we recognize that the 'use of the word "I" is part of our everyday parlance and . . . because of established speech patterns, it cannot always be easily eliminated completely from extemporaneous elocution.' . . . Therefore, if it is clear that the prosecutor is arguing from the evidence

presented at trial, instead of giving improper unsworn testimony with the suggestion of secret knowledge, his or her occasional use of the first person does not constitute misconduct." (Citations omitted.) *State* v. *Luster*, 279 Conn. 414, 436, 902 A.2d 636 (2006). The prosecutor's comments encouraged the jurors to draw reasonable inferences from the evidence. Moreover, these comments also requested that the jurors draw inferences from their own experiences and common knowledge about children. See *State* v. *Glenn*, 97 Conn. App. 719, 735, 906 A.2d 705 (2006), cert. denied, 281 Conn. 913, 916 A.2d 55 (2007). We conclude, therefore, that these comments were not improper.

C

The defendant's final claim of prosecutorial impropriety is that the prosecutor misstated the law and appealed to the jurors' emotions. In support of this claim, the defendant points to the following statements by the prosecutor during closing arguments: "Now the alternative for you to consider, and again, this is . . . under the statute, is whether this punishment of [the defendant's] nine year old son was cruel and wilful. Now the state argues that the facts, and again I'm not saying them all again, but all of the facts demonstrate that the defendant did in fact maltreat and torture [the victim] and that punishment was cruel and unlawful punishment, and I am going to refer you to the [United States] constitution, which . . . prevents cruel and unusual punishment. Our government is not allowed to use this type of punishment toward people who have been convicted of crimes. Should the defendant be allowed to do that to his child?"

"[P]rosecutors are not permitted to misstate the law . . . ." (Internal quotation marks omitted.) *State* v. *Albert D.*, supra, 196 Conn. App. 167. The United States constitution's prohibition against cruel and unusual punishment is irrelevant to the issue of whether the defendant committed acts against the victim in violation of § 53-20 (b) (1).[12] The eighth amendment to the United States constitution prohibits the government from imposing cruel and unusual punishment. It is not implicated in a defendant's alleged conduct in a criminal trial for alleged cruelty to persons. The prosecutor's comparison of the defendant's alleged conduct to the government's constitutionally impermissible conduct under the eighth amendment was misleading. The prosecutor's statement that the defendant's actions constituted cruel and unusual punishment under the eighth amendment to the United States constitution was a misstatement of the law and therefore improper.

Having found that prosecutorial impropriety occurred, "we ask whether the trial as a whole was fundamentally unfair and [whether] the [impropriety] so infected the trial with unfairness as to make the conviction a denial of due process." (Internal quotation

marks omitted.) *State* v. *Albert D.*, supra, 196 Conn. App. 177–78. As discussed previously in this opinion, our determination of whether the defendant's due process right to a fair trial was denied as a result of the impropriety is guided by an examination of the six factors set forth by our Supreme Court in *State* v. *Williams*, supra, 204 Conn. 540. These factors are "[1] the extent to which the [impropriety] was invited by defense conduct or argument . . . [2] the severity of the [impropriety] . . . [3] the frequency of the [impropriety] . . . [4] the centrality of the [impropriety] to the critical issues in the case . . . [5] the strength of the curative measures adopted . . . and [6] the strength of the state's case." (Citations omitted.) Id.

Applying the *Williams* factors, we conclude that the prosecutor's statement about the eighth amendment to the United States constitution, although improper, did not deprive the defendant of his due process right to a fair trial. The first and fourth factors weigh in favor of the defendant as the statement was not invited by defense counsel and was directed to a central issue in the trial, which was whether the defendant's actions were cruel and wilful under the cruelty to persons charge. The other four factors, however, lead us to conclude that the defendant's right to a fair trial was not abridged. As to the second and third factors, we note that the improper reference to the eighth amendment was made only once during closing argument and that it could not be considered severe, as it was not blatantly egregious. See *State* v. *Fauci*, 282 Conn. 23, 51, 917 A.2d 978 (2007) (noting that, in determining severity of prosecutorial impropriety, court will "look to whether the impropriety was blatantly egregious or inexcusable"). Further, "the severity of the impropriety is often counterbalanced in part by the third *Williams* factor, namely, the frequency of the [impropriety] . . . ." (Internal quotation marks omitted.) *State* v. *Albert D.*, supra, 196 Conn. App. 179. Accordingly, we find the second and third factors in favor of the state. As to the fifth *Williams* factor, although there were no specific curative instructions provided to the jury beyond the standard instruction that arguments by lawyers are not evidence, we note that, "[i]n the absence of a showing that the jury failed or declined to follow the court's instructions, we presume that it heeded them." (Internal quotation marks omitted.) Id., 180. Finally, the strength of the state's case mitigated the effect of the prosecutor's misstatement of the law. After reviewing the prosecutor's statement in light of these factors, we agree with the state that the defendant was not deprived of his due process right to a fair trial.

## III

The defendant's remaining claim is that the court erred by failing to give the parental justification defense instruction as to the situation prong of the risk of injury

to a child charge in count two of the information. In a written request to charge and at trial, the defendant argued that the parental justification instruction should be given for count two. The court declined to do so.[13] The defendant argues that our Supreme Court precedent requires that the parental justification defense "applies to all offenses involving a parent's use of reasonable force against a child." (Emphasis omitted.) *State* v. *Nathan J.*, 294 Conn. 243, 253, 982 A.2d 1067 (2009). The defendant concedes, however, that *Nathan J.* addresses only the act prong of risk of injury to a child. We decline to extend the holding of *Nathan J.* to apply the parental justification defense to the situation prong at issue here. Further, the plain language of the parental justification defense demonstrates that the defense does not apply to the situation prong. We, therefore, are not persuaded by the defendant's claim.

We begin by setting forth the relevant principles of law. "If [a] defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction. . . . The defendant's right to such an instruction is founded on the principles of due process." (Internal quotation marks omitted.) *State* v. *Lynch*, 287 Conn. 464, 470, 948 A.2d 1026 (2008). "A challenge to the validity of jury instructions presents a question of law over which this court has plenary review." (Internal quotation marks omitted.) *Mann* v. *Reagan*, 108 Conn. App. 566, 576, 948 A.2d 1075 (2008).

The relevant defense in this case, the parental justification defense, is set forth in General Statutes § 53a-18, which provides in relevant part: "The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances: (1) A parent, guardian or other person entrusted with the care and supervision of a minor . . . may use reasonable physical force upon such minor or . . . when and to the extent that he reasonably believes such to be necessary to maintain discipline or to promote the welfare of such minor . . . ."

Count two of the information asserts that the defendant violated the situation prong of § 53-21 (a), which provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired . . . shall be guilty of . . . a class C felony . . . ." "Health" in the situation prong includes the mental health of the child. See *State* v. *Payne*, 240 Conn. 766, 771, 695 A.2d 525 (1997), overruled in part on other grounds by *State* v. *Romero*, 269 Conn. 481, 490, 849 A.2d 760 (2004).

Determining whether the parental justification defense of § 53a-18 should apply to the situation prong of § 53-21 (a) (1) requires us to employ the tools of statutory interpretation. "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Footnote omitted; internal quotation marks omitted.) *Western Dermatology Consultants, P.C.* v. *VitalWorks, Inc.*, 146 Conn. App. 169, 199, 78 A.3d 167 (2013), aff'd, 322 Conn. 541, 153 A.3d 574 (2016).

We first examine the language of the § 53a-18 (1), which provides in relevant part that "[a] parent, guardian or other person entrusted with the care and supervision of a minor . . . may use reasonable physical force upon such minor . . . when and to the extent that he reasonably believes such to be necessary to maintain discipline or to promote the welfare of such minor . . . ." The meaning and applicability of this defense is plain and unambiguous: the defense applies only to the use of reasonable physical force on a minor. The situation prong of § 53-21 (a) (1) encompasses a wider range of conduct beyond physical acts. Therefore, the plain language of §53a-18 (1) makes clear that the defense is available to only a narrow range of conduct as provided for in the statute.

Accordingly, for a defendant to deploy the protection afforded by the parental justification defense, the defendant must be charged with committing some physical act against a child. Both the defendant and the state rely on *Nathan J.* to support their positions. The defendant relies on *Nathan J.* to support his contention that the parental justification defense must also be applied to the situation prong of § 53-21 (a) (1). The state, in contrast, emphasizes that *Nathan J.* addressed only the act prong of § 53-21 (a) (1), and, thus, the court's reasoning

is inapplicable to the situation prong at issue here. In *Nathan J.*, the defendant was charged with assault in the third degree, disorderly conduct, and risk of injury to a child under the act prong of § 53-21 (a) (1). *State v. Nathan J.*, supra. 294 Conn. 248. The trial court instructed the jury on the parental justification defense as to the assault and disorderly conduct charges. Id., 249. It also expressly instructed the jury that the defense did not apply to the risk of injury charge. Id. The defendant then appealed to this court, which determined that the defense applied as a matter of law to conduct charged under § 53-21 (a) (1). Id., 250. On appeal to our Supreme Court, the state argued that the "blatant physical abuse required under the risk of injury statute," which is consistent with the judicial gloss established in *State* v. *Schriver*, 207 Conn. 456, 466, 542 A.2d 686 (1988), "is logically inconsistent with corporal punishment that is reasonably necessary for purposes of parental discipline, as required under [the] parental justification defense." *State* v. *Nathan J.*, supra, 250. The court rejected this contention. The court discussed how *Schriver* "left in place the authoritative judicial gloss prescribed under our case law limiting the type of physical harm prohibited by the act prong of § 53-21 [(a) (1)] to blatant physical abuse." Id., 253. The court then determined that the text of § 53a-18 (1) indicates that it applies to all offenses involving a parent's use of reasonable force on a child. Id. It further determined that it was not inconsistent with the requirement of blatant physical abuse under § 53-21 (a) (1), as the state argued, to apply the parental justification defense to conduct brought under the act prong. Id., 254. The court turned to the meaning of the words "blatant physical abuse" and concluded that there is no reasonableness component to "blatant physical abuse" that would conflict with the reasonableness inquiry inherent in the parental justification defense. Id., 257. Accordingly, the defense could be applied to such conduct.[14] Id., 260. The court concluded that it was improper for the jury to be only "directed, in accordance to the *Schriver* gloss, to consider whether the defendant's conduct was blatant physical abuse" and not consider the reasonableness of the defendant's actions pursuant to the parental justification defense. Id.

The court in the present case discussed *Nathan J.* when it denied the defendant's request to apply the parental justification defense to the situation prong of § 53-21 (a) (1). The court stated that "the situation prong is a different gloss."

As the defendant and the state both note, the charges at issue in *Nathan J.* involved physical force. In seeking to use the parental justification defense, the defendant in *Nathan J.* argued that he used reasonable physical force against the minor child because he believed that it was necessary for the discipline and welfare of that child. *State* v. *Nathan J.*, supra, 294 Conn. 260. The

same logic does not apply to the situation prong. The very purpose of the parental justification defense, as evidenced by the plain language of § 53a-18 (1), is rooted in the physical act committed against the child. The situation prong goes beyond that scope of the parental justification defense.[15]

In the present case, the defendant argued, both at trial and in his appellate brief, that the state did not explicitly make clear what theory—injury to life or limb, health or morals of the child—it was arguing under the situation prong. In his appellate brief, the defendant argues that the state's theory was that the defendant's conduct of physically disciplining the victim created the situation that was likely to cause injury to the victim's health or morals. Thus, it was the act of disciplining the victim itself that created the situation that harmed the victim. Accordingly, the defendant argues, because the physical discipline under the act prong caused the harmful situation under the situation prong, and because the defendant received the justification instruction on the "act," he should also have received it on the "situation." This argument overlooks the plain language of § 53a-18 (1): the parental justification defense is available only for the specific circumstance in which the defendant uses reasonable physical force that he or she believes to be necessary to discipline or promote the welfare of the child. As the court noted, the judicial gloss on the act prong distinguishes it distinctly from the situation prong. The court did not err in concluding that the parental justification defense did not apply to the situation prong of the risk of injury to a child charge in count two of the information.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] General Statutes § 17a-101g provides in relevant part: "(e) If the Commissioner of Children and Families, or the commissioner's designee, has probable cause to believe that the child or any other child in the household is in imminent risk of physical harm from the child's surroundings and that immediate removal from such surroundings is necessary to ensure the child's safety, the commissioner, or the commissioner's designee, shall authorize any employee of the department or any law enforcement officer to remove the child and any other child similarly situated from such surroundings without the consent of the child's parent or guardian. The commissioner shall record in writing the reasons for such removal and include such record with the report of the investigation conducted under subsection (b) of this section.

"(f) The removal of a child pursuant to subsection (e) of this section shall not exceed ninety-six hours. During the period of such removal, the commissioner, or the commissioner's designee, shall provide the child with all necessary care, including medical care, which may include an examination by a physician or mental health professional with or without the consent of the child's parents, guardian or other person responsible for the child's care, provided reasonable attempts have been made to obtain consent of the child's parents or guardian or other person responsible for the care of such child. During the course of a medical examination, a physician may

perform diagnostic tests and procedures necessary for the detection of child abuse or neglect. If the child is not returned home within such ninety-six-hour period, with or without protective services, the department shall proceed in accordance with section 46b-129. . . .”

[2] We note that the defendant also has not complied with Practice Book § 67-4 (e) (3).

[3] The defendant's appellate briefs do not adequately address his claim regarding the purported violation of his right to present a defense. The briefs include only the relevant law without any further application to the facts of the case. See *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 245 (2008) (noting that when “issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived” (internal quotation marks omitted)). Accordingly, we decline to address this potential claim.

[4] Specifically, the following colloquy occurred between defense counsel and Brown:

“Q. You're familiar with the DSM, correct?

“A. Correct.

“Q. That's the Diagnostic Statistical Manual.

“A. Right. . . .

“Q. And it's generally accepted in the psychological community and mental health community as an authoritative text, right?

“A. Yes. . . .

“Q. And you're familiar with the diseases that are in here.

“A. Yes.

“Q. The mental illnesses that are described.

“A. Yes. I mean I don't have it memorized, but, yes, I'm familiar with them. . . .

“Q. You are familiar with oppositional defiant disorder.

“A. Yes. . . .

“Q. Thank you. Now, in the DSM, oppositional defiant disorder is defined as a pattern of angry irritable mood, argumentative defiant behavior or vindictiveness lasting at least six months, correct?

“A. Yes, I believe so. You're reading from it there so yes. . . .

“Q: Can you not remember off the top of your head the specific language from the definition of oppositional defiant disorder?

“A. When we're diagnosing, we're not doing it by just memory. We have the tools with us.

“Q. Right. So, if I may, Your Honor? If I may approach, I'm happy to provide this for you. I believe this is something you were familiar with at one point, and this is what you would use to diagnosis, correct?

“A. Right.”

[5] In the defendant's reply brief, he argues that, because the court referenced the motion in limine, the court ruled on it “incrementally.” He argues that, because the court referenced the motion before evidence, “[it] was [an] ongoing open motion dependent upon witness' testimony . . . [that] was argued and ruled upon incrementally.” It is well established that arguments cannot be raised for the first time in a reply brief. See *State* v. *Gavin*, 242 Conn. 296, 312, 699 A.2d 921 (1997). Accordingly, we do not review this claim.

[6] These exhibits included medical reports from three separate visits the victim made to the center.

[7] The court overruled the defendant's objections and stated: “The court finds that they are [admissible] pursuant to the exception, the medical records and treatment.”

[8] During Walsh's testimony about her examination of the victim and her notes from that examination, the prosecutor proffered the exhibits into evidence. The court stated: “This was subject to discussion outside the presence of the jury. The court relied on the hearsay exception to medical records, and it's being offered pursuant to that motion as a full exhibit.” The court then asked defense counsel, “Counsel, any further objection?” In response, defense counsel merely stated, “No, I just reserve the issues [that] were raised.”

[9] See footnote 7 of this opinion.

[10] The defendant argues that the court permitted the exhibits at issue, and the subsequent testimony regarding their contents, to be admitted as expert opinion evidence pursuant to § 7-3 of the Connecticut Code of Evidence. This contention is belied by the record. In overruling the defendant's objection to the admission of the documents from the center, the court stated: “The court finds that they are [admissible] pursuant to the exception, the medical

records and treatment."

[11] The defendant argues that the prosecutor "sarcastically" argued to the jury, "[a]pparently . . . Brown had to consider every other mental disease and disorder in that [Diagnostic Statistical Manual], the psychiatric bible that was held up for you. That's a very thick book."

[12] As discussed previously in this opinion, the defendant was convicted of cruelty to persons in violation of § 53-20 (b) (1), which provides: "Any person who, having the control and custody of any child under the age of nineteen years, in any capacity whatsoever, intentionally maltreats, tortures, overworks or cruelly or unlawfully punishes such child or intentionally deprives such child of necessary food, clothing or shelter shall be guilty of a class D felony."

[13] The court instructed the jury as follows: "After you have considered all of the evidence in this case, if you find that the state has proved beyond a reasonable doubt each element of the crimes as charged, you must then consider whether the defendant acted with parental justification in the discipline of [the victim]. You must consider this defense in connection with count one, risk of injury to a minor. The state alleges that the act of the defendant must cause blatant physical abuse to [the victim]. The parental— this defense, parental justification, is to be applied to that charge.

"If you find the state has proven beyond a reasonable [doubt] the elements of risk of injury, then you consider whether or not the state has disproven . . . this justification defense. There's no burden for the defense to prove anything. The defense was raised with evidence in the trial through perhaps the testimony of some witnesses as well as the stipulation read to you called admissions regarding the physical discipline. That's raised.

"So, in order to determine whether or not the state has disproven the justifiable discipline of justification, parental justification, you must first find beyond a reasonable doubt unanimously that the state has proven the elements of the crime. Count one, risk of injury. If you find the state has not proven beyond a reasonable doubt the elements of the crime, then, of course, you need not consider this justification defense.

"Now, in considering the evidence, you find the state has proven beyond a reasonable doubt each of the elements of the crime, you must go on and consider whether the defendant acted with parental justification in the discipline of [the victim]. You must consider this offense in connection with counts one, risk of injury with the act prong, count three, serious—assault in the second degree with a dangerous instrument, count three, count four, assault in the second degree and count five, cruelty to persons, [the defense] does not apply to [the] situation prong on count two."

The court provided further instructions on the elements on the crimes with which the defendant was charged and reiterated that the defense did not apply to the situation prong.

[14] The court noted that "a forceful spanking might well qualify as blatant physical abuse because it is an obvious, wilful, nonaccidental force against a child." *State* v. *Nathan J.*, supra, 294 Conn. 260.

[15] In *Nathan J.*, the court noted that "[t]he reach of the situation prong of § 53-21 (a) (1) is actually broader than that of the act prong." *State* v. *Nathan J.*, supra, 243 Conn. 264 n.13; see *State* v. *Payne*, supra, 240 Conn. 782 ("a defendant need not touch a child in order to violate the [situation prong of § 53-21 (a) (1)]").